[Abraham v. Nicrosi.]

# Abraham *v.* Nicrosi.

*Attachment for Rent by Landlord.*

1. *Landlord's lien for rent, on goods in store-house.*—Under statutory provisions giving to landlords of store-houses, dwelling-houses and other buildings "a lien on the goods of their tenants for rent" (Code, §§ 3069-74), construed in the light of the rules of the common law governing the remedy by distress, the lien attaches, where the tenancy is continued, by express contract, or by implication, to goods brought on the premises after the expiration of the original term, and remaining there when the attachment is sued out to enforce it; and this lien must prevail against the claim of a third person in possession by purchase from the tenant.

2. *Practice in attachment suits, on interposition of claim by third person, and motion to dissolve attachment and dismiss levy.*—In an attachment suit, the defendant only appearing for the purpose of moving to dissolve the attachment and dismiss the levy, the attached property having been claimed by a third person as purchaser; although the court may correctly adjudge that the property is, on the facts proved, subject to the attachment, it should only render judgment overruling the defendant's motions, and delay final judgment, until the determination of the adverse claim to the property; and the defendant himself may assign as error the rendition of final judgment against him.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This action was brought by P. M. Nicrosi against Jacob Abraham, and was commenced by attachment sued out on the 10th January, 1887. The cause of action was the defendant's promissory note for $225, which was dated July 30th, 1885, payable on the 1st July, 1886, and given for one month's rent of a store-house in the city of Montgomery; and the attachment was levied on the stock of goods in the store-house on the day the attachment was sued out, to which a statutory claim was thereupon interposed by David Abraham, who was a son of Jacob Abraham. At the ensuing March term of the court, the defendant appeared by attorney, but only for the special purpose of making three motions, which were, in substance, to dissolve and dismiss the attachment, and to discharge the levy, on the ground that the goods levied on were not subject to the attachment; which motions being heard together by consent, and issue joined as to whether the goods were subject to the levy of the attachment, "the said issue was, by order of the court, submitted for trial to a jury;" and this issue being found in favor of

[Abraham v. Nicrosi.]

the plaintiff, the court· rendered judgment declaring the property subject to the levy, and then rendered final judgment by *nil dicit* against the defendant.

On the trial of the issue before the jury, as appears from the bill of exceptions, the plaintiff having read in evidence the note on which his action was founded, it was proved on the part of the defendant, by said David Abraham, his son, that on the 30th July, 1885, the day on which the note was given, defendant leased from plaintiff the store-house in the city of Montgomery in which the goods were when the attachment was levied on them; that the lease was for the term of one year, commencing on the 1st October, 1885; that said note was given for rent accruing under said lease; that the defendant, at the expiration of the lease, again leased the store-house for another year, and continued to occupy it as before; that the goods levied on were bought by the defendant, and brought into the store-house, after the expiration of the first lease, and during the term of the second lease, and that on the 7th January, 1887, three days before the levy of the attachment, he (witness) bought from his father the entire stock of goods in the store-house. On cross-examination of said witness, he further testified that his father, during the year 1885-6, "was constantly buying and selling goods, and kept his stock up to about the same amount;" and the court admitted this evidence, against the objection and exception of the defendant. On the part of the plaintiff, John Nicrosi, his agent, testified that, when the note fell due, and was presented for payment, defendant asked indulgence on it, promising to pay the notes given on the new lease promptly as they fell due; that he assented to this, and all of the notes subsequently maturing were paid.

On these facts, the court charged the jury, on request of the plaintiff, "that if the goods were on the rented premises at the time of the levy, it makes no difference whether they were bought before or after the 1st October, 1886." The defendant excepted to this charge, and requested the court, in writing, to instruct the jury, "that they should find a verdict for the defendant, if they believed the evidence;" which charge the court refused, and the defendant excepted.

The admission of the evidence objected to, the charge given, the refusal of the charge asked, and the final judgment, are now assigned as error.

ARRINGTON & GRAHAM, for appellant.—(1.) The statute

giving landlords a lien, such as is sought to be enforced in this case, is in derogation of the common law, and must be strictly construed. — *Nation v. Roberts*, 20 Ala. 544; *Zackowski v. Jones*, 20 Ala. 189; *Kirksey v. Dubose*, 19 Ala. 43; *Scaife v. Stovall*, 67 Ala. 237; *Beale v. Posey*, 72 Ala. 323; *Cook v. Meyer*, 73 Ala. 580. (2.) The statute gives a lien on the goods of the tenant in the store-house, or other building; and each contract of lease is to be construed as if the statute were incorporated in it. If so incorporated, the lien would extend only to goods brought into the house during the term; and there can be no presumption that the parties contemplated, or provided for, a continuation of the lease. (3.) The judgment of condemnation, and the judgment by *nil dicit*, is each erroneous. — *Moore v. Dickerson*, 44 Ala. 485; *Nabors v. Nabors*, 2 Porter, 162; *Lampley v. Beavers*, 25 Ala. 534. (4.) The evidence objected to was irrelevant, and should have been excluded. — 65 Ala. 88; 56 Ala. 235; 17 Ala. 566; 8 Porter, 511. (5.) The motions were the proper remedy for reaching the irregularity complained of. *Rich v. Thornton*, 69 Ala. 473; *Brown v. Coats*, 56 Ala. 439; *Drakeford v. Turk*, 75 Ala. 339.

WATTS & SON, *contra*, cited *Hadley v. Bryers*, 58 Ala. 139; *Stewart v. Goode & Ulrick*, 29 Ala. 476; *Eaton v. Harris*, 42 Ala. 491; *Sevier v. Throckmorton*, 33 Ala. 512; *Roberts v. Burgess*, 85 Ala. 192; *Harmon v. Jenks*, 84 Ala. 74; *Lucas v. Goodwin*, 6 Ala. 831; *Thornton v. Winter*, 9 Ala. 613; *Betancourt v. Eberlein*, 71 Ala. 461.

McCLELLAN, J.—The act of February 23, 1883, as amended by the act of February 17, 1885 (now constituting sections 3069–3074 of the Code), giving to "landlords of store-houses, dwelling-houses and other buildings, a lien on the goods of their tenants for rents," must be construed in the light of the common law, and be accorded such operation and effect, not inconsistent with its terms, as was given to the landlord's remedy under the old law of distress. The main points of difference between the statutory and common-law systems are, that the former substitutes the process of courts for the personal distraint of the landlord allowed by the latter, and confines the distress to the property of the tenant; whereas, under the latter, the right to distrain extended to the goods of a stranger found on the demised premises. These changes were necessary, to conform the

law to the genius of our institutions, which is inimical alike to the taking of property without due process of law, and to the subjection of the goods of one man to the satisfaction of the debt of another, on the mere fortuitous circumstance of their being on the premises of the debtor. Aside from the cardinal points of difference, and such changes in detail as were necessary to limit and effectuate the new remedy, it is apprehended that the principles of the common law, as to rent and the remedies for its collection, apply also to the statutory right and remedy we are considering. At common law, there would be no distress, unless the relation of landlord and tenant existed. Under our statute, the existence of this relation is essential to the right of attachment. At common law, the right to distrain pertained only to property which was, or had been within a certain period, on the premises. There is no express, or necessarily implied limitation of this kind, in our statute, but, following the common law, we have adjudged that the right to attach extended only to goods which enjoyed the protection of the premises for which rent is claimed.—*Ex parte Barnes,* 84 Ala. 540. Distress could only be made, at common law, during the term of the lessee; and doubtless, under the statute, an attachment could not be maintained after the termination of the demise, except it may be in the enforcement of a lien which had attached before. What was a termination of a lease, in the sense which operated to put an end to the right of distress, became the point of many decisions at common law; and no reason occurs to us for not according to the principles settled in these cases a controlling influence in the construction of our statute, or, rather, in determining whether, in a given case, the term has ceased in that sense which defeats the right to attach. It is thoroughly established by these adjudications, that where the tenant holds over, after the term originally stipulated, the relation of landlord and tenant continues; the original term is held to be enlarged, and the right to distrain for the rent of any part of the tenure still exists.—Taylor Land. & Ten., p. 448, § 564.

This rule is based on the implication, which the law raises, that the parties have agreed to a continuation of the lease, and looking back from any point during the holding over, to the inception of the relation, the whole time is in law considered but one term. The courts, seizing on the reason for this result—the implication of an agreement to continue the

term—gave the rule a wider operation, and extended it to cases in which the contract for a continuation of the tenancy was expressed, as it before applied to contracts which were implied from the situation of the parties. It thus became the settled law, that where there are successive leases from year to year, for the purpose of distress, all of such successive years are regarded as constituting but one term. In a leading case on this subject, there was a rental for the year 1839, another for the year 1840, evidenced by a different instrument, and yet another for the year 1841, evidenced by an indorsement on the contract for 1840; and a distress in 1840 for the rent in arrear for 1839. Holding the distress well made, the court uses this language: "What is there in the nature of the case to prevent us taking a stand at the time of the distress, and computing backwards, according to the acts of the parties? Had the renewal for the several years been by implication, it would, according to the language of the writers, have been construed to spring out of, and continue to enlarge the first lease. Shall an express renewal have a less important effect? There is just as much room for implication and constructive continuation in the one case as the other."—*Webber v. Shearman*, 6 Hill, 20. This case was followed by subsequent ones; and it may now be considered as settled law, that where there are leases from year to year, and the rent of a former is in arrear during a subsequent year, the goods of the tenant then on the premises may be distrained for such rent.—*Bell v. Potter*, 6 Hill, 497; *Parker's Appeal*, 5 Penn. St. 390; Taylor Land. & Ten., p. 504, § 572.

Substituting the lien of our statute, and the remedy by which the lien is effectuated, for the old lien and remedy by distress, and applying the principles above stated to the operation of the statute in this case, the result is, that the plaintiff below had a lien on the goods in the store-house at the time of the attachment, for the rent in arrear for the previous year, whether those goods were in the store before the end of that year or not; and the charges given by the court asserting this proposition are free from error. The lien attached to the goods the moment they were brought into the house, if, when brought in, they belonged to the tenant; and the alleged sale of January 7th, 1887, to the tenant's son, conveyed no right to the property, which could prevail over the lien, so long as the goods remained on the demised premises. If these positions be well taken, it follows that

12

[Abraham v. Nicrosi.]

the evidence offered on the trial of the motion to dissolve raised a wholly immaterial inquiry; and if error was committed in the admission of testimony, in rebuttal of irrelevant evidence introduced by the defendant, it was error without injury; and if error, and injurious, the error is not one of which the defendant can complain.—*Harmon v. Jenks*, 84 Ala. 74.

The judgment invoked by the motions should have been confined to the motions. If the court had found that the property was not subject to the attachment, for the reason that the debt sued on was not for rent for the payment of which a lien existed on the property, the attachment should have been dissolved. Having, as we have seen, correctly found that the note was for rent for which a lien on the property of defendant in the store during the second year of the lease existed, the judgment should have been simply that the motions be denied. The case would then have been precisely in the same condition as if the motions had not been made. So considered, it presents the features of an ordinary attachment suit, in which there has been a limited appearance by the defendant, and a claim interposed by a third person, under the statute, which was still pending. The jurisdiction of the court to proceed to final judgment, depended on whether the levy had been made on property which belonged to the defendant. That question could not be determined on the motions. The interposition of the claim by D. Abraham had the effect of rebutting the presumption of that fact which arose from the sheriff's return, and postponed its ascertainment until the trial of the issue between the plaintiff and the claimant. Until the trial was had, and the property found in it to be subject to the attachment, there was no such service of process on the defendant, by levy on his property, as would support a judgment by default. That the court, in passing on defendant's motion, had adjudged the property to be his, can make no difference. It could not cut off the claim in that trial. And if, on the trial of the claim suit, the issue should be found in favor of D. Abraham, and the property be adjudged to belong to him, the court would be put in the attitude of having rendered a personal judgment against J. Abraham, without personal service, without an appearance on his part, and without constructive service by levy on his property. These considerations lead us to the conclusion, that the court erred in entering up judgment against the defendant; a conclusion that is also strongly sup-

[Campbell v. Hopkins.]

ported by the statute, which clearly contemplates that the suit against the defendant shall stand in abeyance, or at least not proceed to a judgment of condemnation, until the claim suit has been determined.—Code, §§ 3012–3013; *Moore v. Dickerson*, 44 Ala. 485; *Lampley v. Beavers*, 25 Ala. 533.

It follows, that the judgment of condemnation was also erroneous; and for these reasons, the judgment will be reversed, and the cause remanded.

Reversed and remanded.