# Weil *v.* McWhorter.

## *Statutory Claim Suit.*

1. *Landlord's lien on goods, for rent of storehouse.*—A landlord's statutory lien on the goods of his tenant for the rent of a storehouse (Code, §§ 3069-70) is not lost or impaired by their removal from the premises before the levy of an attachment, nor by a sale to a purchaser with notice, except when the sale is made in the usual course of trade in his business as a merchant; and a sale in payment of an antecedent debt, made only for the purpose of paying the debt, is not within the exception.

2. *Same; constructive notice of.*—A purchaser of goods from the tenant in a rented storehouse, the sale not being made in the usual course of trade as a merchant, is chargeable with constructive notice of the landlord's lien for rent, although he was assured by the tenant that the rent was paid.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. HENRY C. SPEAKE.

On the 28th June, 1888, Isaiah Weil, the appellant, sued out an attachment against Pierce & Crumbacker, for the rent of a storehouse for the year 1888, on the ground that they had fraudulently disposed of their goods. The attachment was levied by the sheriff on the defendant's stock of goods remain-

[Weil v. McWhorter.]

ing in the storehouse, and also on another quantity of goods' consisting of paints, oils, varnishes, &c., which had been removed from the storehouse into another building. A claim to the latter goods was thereupon interposed by Morgan Mc-Whorter, and bond given for a trial of the right of property; and the issue formed between the parties was submitted to the decision of the court without a jury, on an agreed statement of facts. The contract of rent, and the amount of plaintiff's debt, were admitted; also, that on or about June 20th, 1888, the defendants being indebted to the claimant by promissory note for $200, and being threatened with suit, "said they had no money, but offered to pay the debt in goods from their store; that claimant accepted this proposal, and bought and removed said goods from the storehouse, their value being about $200, and surrendered their said note to defendants;" also, "that claimant did not then know that defendants owed plaintiff any rent, or any debt at all, but was informed by defendants, and believed at the time, that defendants had paid all the rent for which they were liable, but he knew that the storehouse occupied by them was not their property." On these facts, the court held that the landlord's lien was lost by the sale and removal of the goods, and rendered judgment for the claimant; and this ruling, to which the plaintiff excepted, is now assigned as error.

LAWRENCE COOPER, for the appellant, cited *Ex parte Barnes*, 84 Ala. 540; *Wilson v. Stewart*, 69 Ala. 302; *Stern v. Simpson*, 62 Ala. 194; *Leslie v. Hinson*, 83 Ala. 266; *Lomax v. LeGrand*, 60 Ala. 544; *Richardson v. Peterson*, 58 Iowa, 724; 1 Jones on Liens, § 577; *Fowles v. Rapley*, 15 Wall. 328.

R. H. LOWE, *contra*, cited Jones on Liens, § 580; *Fowles v. Rapley*, 15 Wall. 328; *Abraham v. Nicrosi*, 87 Ala. 176; *Grant v. Whitwell*, 9 Iowa, 152; 5 Amer. & Eng. Encyc. Law, 709.

McCLELLAN J.—We have had occasion in the cases of *Ex parte Barnes*, 84 Ala. 540, and *Abraham v. Nicrosi*, 87 Ala. 173, to institute a comparison between the rights and remedies of a landlord existing under the common law of distraint, and his rights and remedies under the Code of 1886 (§§ 3039–3074) providing a lien on the property of the tenant for the rent of storehouses and other buildings. In the case last noted, we held that our statute "must be construed in the light of the common law, and be accorded such operation and effect, not inconsistent with its terms, as was given to the

[Weil v. McWhorter.]

landlord's remedy under the old law of distress." Upon this principle we there held, in consonance with the rule obtaining at common law, the statute being silent on the subject, "that where there are leases from year to year, and the rent of a former is in arrears during a subsequent year, the goods of the tenant then on the premises are subject to the statutory lien for the satisfaction of the rent which accrued under another lease for a previous year." So in *Ex parte Barnes, supra,* the terms of the statute being broad, sufficiently so indeed, if not restrained by recognized general principles, to cover all property belonging to the tenant, whether at the time or ever on the premises or not, it was ruled that the general terms of the act must be construed with reference to the policy of the common law in respect of distress, which did not contemplate the subjection of property to the payment of rent which had not enjoyed the protection of the demised premises, that property which had never been on the premises could not be subjected to the statutory lien. There are doubtless other matters with respect to which the operation of the statute will be shaped by reference to the principles obtaining in regard to the common law of distress. But in addition to the points of radical difference between the two remedies adverted to in *Abraham v. Nicrosi,* there is one such which has an important bearing on the case at bar. The landlord, at common law, had no lien upon the goods of his tenant until distress levied. Moreover, originally he had no right of distress upon goods of the tenant after they had been removed from the premises, unless removed after the landlord or his bailiff, armed at the time with the right to distrain, had had view of them on the premises. This was subsequently changed by statute so as to allow distress, within a certain number of days, upon goods which had been fraudulently removed, but still there was no lien until the distress had been actually made. On the other hand, the statute we are considering, as construed in *Ex parte Barnes, supra,* in terms gives the landlord a lien on all property of the tenant from the moment it is brought on the premises, and the remedy by attachment is not, as in distress, to fix a lien, but to enforce one already existing; the lien does not depend upon levy, but is the predicate for the levy. It attaches from the commencement of the tenancy, for the security of the rent when it matures. *Garner v. Cutting,* 32 Iowa, 547; *Grant v. Whitwell,* 9 Iowa, 152; *Hunter v. Whitfield,* 89 Ill. 229.

This lien is similar in all respects to that created by statute in favor of agricultural landlords, except as to the species of property to which it attaches, and the reasons upon which the

charge upon the property proceeds. Once attached, we can conceive of no ground for giving it a different operation and effect as regards the rights of the parties to it, or the rights of third parties who acquire an interest in the property, than is given by our statute and decisions to the lien in favor of landlords of agricultural lands, save only in one particular to be presently discussed. With respect to liens of the latter class, the law with us is thoroughly well established, that they are not displaced by the removal of the property from the premises, nor by its sale to a third person who either knows or is chargeable with knowledge of the lien; and it is equally well settled law, that one is chargeable with such knowledge who knows that the property he purchases is the product of rented lands.—*Scaife v. Stovall*, 67 Ala. 237; *Stern v. Simpson*, 62 Ala. 194; *Manasses v. Dent*, 89 Ala. 563. And we can not doubt that, ordinarily, one who purchases from a tenant of a building property to which the landlord's lien has attached, with a knowledge of the existence of the tenancy, takes it subject to the lien. Notice of the tenancy is sufficient to put him on inquiry as to whether any rent has accrued, and where this inquiry, if properly prosecuted, and information sought of the landlord, would disclose that rent had accrued, whether due or not, the purchaser is held to know the fact. To make inquiry of the tenant will not suffice. On these considerations and authorities, it is our opinion on the agreed facts, that the claimant below bought the property with notice of plaintiff's lien, and that his claim thereto against the attachment can not be maintained, unless the transaction between him and the tenant is brought within the exception before alluded to.

It is the recognized doctrine of the common law of distress, that when a house is rented for mercantile purposes, it is the implied understanding of the parties that goods kept therein for sale may be disposed of in the usual course of the particular business, free from the claim for rent, and that the purchaser, though with full notice, it may be, that rent has accrued, takes them discharged from the landlord's lien; and on the principles laid down in *Abraham v. Nicrosi, supra*, this doctrine must be held to obtain under our statute. The tenant in the present case appears to have been a dealer in paints, oils, wall-paper and the like; and rented the storehouse from the plaintiff for the purpose of conducting that business therein. The usual course of trade in such business we apprehend to be the sale of the commodities constituting the stock of goods to persons who have need of them, for money either paid or to be paid. It may be, indeed no doubt it is,

[Weil v. McWhorter.]

that where such dealer casually owes a customer a sum of money, and that customer has need of his debtor's wares, the supplying of such necessity in consideration of the satisfaction of the indebtedness, the transaction would be in the usual course of trade though no money was paid or to be paid. But, where the tenant owes a debt, and his creditor, solely for the purpose of collecting his claim, and not to supply any necessity he may otherwise have for the tenant's goods, takes them in satisfaction of his debt because this is the only way in which he can realize upon it, we are clear to the conclusion that this is not in the usual course of that business, and that the property so taken is not discharged from the lien. Sales for money take nothing out of the business; indeed, they add to the capital of the business to the extent of the profits which it is to be presumed are made, increase the tenant's ability to pay rent, and enable him to buy other goods which become subject to the lien and afford security to the landlord until they are in like manner disposed of. And these considerations afford additional reasons for the law's implication that goods thus sold are by the intendment of the parties discharged of the lien. Not so with respect to a sale in payment of, and for the purpose of paying, an antecedent debt. This may be beneficial to the tenant, but it can not be otherwise than detrimental to the business from the point of view of the landlord. The property taken out of the business by such transaction is not replaced by other property, or by money with which to buy other property, upon which the lien would become operative. The tenant's ability to pay rent is lessened. The landlord's security is decreased. Such transaction can in no just sense be said to be necessary in the prosecution of the business. And every reason for an implication for an intendment between the parties that property so disposed of shall be discharged of the lien is wholly lacking. All this is true, moreover, as well with respect to a sale of any part of the stock upon such consideration, as to a sale of the whole of it.

The agreed facts, in our opinion, bring this case clearly within the foregoing principles. The claimant had constructive notice of the lien. With this notice he purchased the goods solely for the purpose of realizing on the indebtedness of the tenant to him. The transaction was not in the usual course of trade, and the plaintiff's lien was not displaced by the sale and removal of the property. The judgment of the Circuit Court must therefore be reversed, and the cause will be remanded.