# Hamil *v.* American Freehold Land Mortgage Co.

*Bill in Equity to concel Mortgage as Cloud upon Title.*

1. *Negotiation of loan; agent of borrower; authority to receive money loaned binds borrower.*—Where in an application for a loan of money, the borrower agrees to pay a third person as his attorney "a reasonable fee for taking the application, conducting the correspondence, making ample abstracts of title to her lands, and securing and paying over the moneys," the borrower thereby constitutes such person her agent with authority to receive the borrowed money from the lender, and where it is shown that the money so borrowed was delivered to such agent by the lender, the failure of the borrower to receive such money, furnishes no ground for the borrower to avoid a mortgage which was given to the lender to secure its repayment.

2. *Same; broker for the negotiation of a loan, the agent of borrower, and not of lender.*—Where in an application made for the loan of money, the borrower employs a broker to secure the loan, and such broker has the borrower to comply with the conditions imposed by the proposed lender; who knows nothing of the appropriation of the security, or of the terms of the employment of the broker by the borrower, if the security offered is accepted, and the loan made by the lender to whom the application is made, such broker is the agent of the borrower, and not of the lender.

[Hamil v. American Freehold Land Mortgage Co.]

3. *Equity pleading; fraud as a ground for relief must be averred in bill.*—In a bill filed by a married woman to have a mortgage executed by her upon her separate property, with the written assent of her husband, set aside and annulled, as being a cloud upon her title, where the ground for relief as averred is that the debt secured by said mortgage was not that of the complainant, but was the debt of her husband, proof of fraud in obtaining the complainant's signature to the mortgage will not authorize the granting of the relief, since where fraud is relied upon, it must be specially pleaded.

4. *Husband and wife; right of wife to mortgage her property, with assent of the husband; effect of amendatory statute.*—Under the provisions of § 2348 of the Code of 1886, a married woman has full capacity to make a valid mortgage upon her separate property, with the written assent and concurrence of her husband; and the act approved Feb. 16, 1895 (Acts of 1894-95, p. 1138) "to amend § 2348 of the Code of 1886," did not in any way affect this right of the wife under said section of the Code. Said amendatory statute simply conferred upon a married woman the right to alienate and mortgage her real property without the assent or concurrence of her husband in certain contingencies therein named, where the husband was not expected to give his written assent.

APPEAL from the Chancery Court of Pike.

Heard before the Hon. W. L. PARKS.

The bill in this case was filed by Orlena A. Hamil, a married woman, the wife of Irby W. Hamil, to remove as a cloud from her title two mortgages, one of which was made to the American Freehold Land Mortgage Co., of London, Ltd., on February 17, 1891; and the other to the Loan Company of Alabama, on December 3, 1895. It was averred in the bill that the complainant was the owner of certain described lands as her separate estate; that on December 3, 1895, she joined with her husband, Irby W. Hamil, in the execution of an extension agreement, which referred to a note and a mortgage purporting to have been executed by the complainant and her husband to the American Freehold Land Mortgage Co., of London, Ltd., which mortgage conveyed the lands described as her separate estate. That on said 3d day of December, 1895, she joined with her husband in the execution of a mortgage to the Loan Company of Alabama, to secure an indebtedness of

[Hamil v. American Freehold Land Mortgage Co.]

$82.90, in which mortgage they conveyed the same lands which were conveyed in the mortgage to the American Freehold Land Mortgage Co. It was then averred in the bill that the complainant did not on February 16, 1891, nor has she at any time, borrowed any sum of money from the American Freehold Land Mortgage Company, nor has she ever received from said company or their duly constituted agent any money, nor has said company ever paid her any money directly or indirectly on account of any loan; that the said debt or transaction intended to be secured by the mortgage executed on Feb. 16, 1891, was not her debt, and was the debt of her husband, and that in the execution of said mortgage, she joined with her husband to secure his debt. It was also further averred that the debt to the Loan Company being recognized and secured by the mortgage of Dec. 3, 1895, made it the debt of her husband, and in no wise her debt; that she never engaged the Loan Company of Alabama, nor did she ever authorize her husband or any one else to engage the services of said company for any purpose whatever, and that in the execution of the mortgage to the Loan Company she simply joined therein as surety for her husband. The prayer of the bill was that these mortgages should be cancelled and annulled as a cloud upon complainant's title. The American Freehold Land Mortgage Company of London, Ltd., and the Loan Company of Alabama were made parties defendant. The American Freehold Land Mortgage Co. extension agreement referred to in the bill and attached thereto as an exhibit, recited the fact that on Feb. 16, 1891, Mrs. Orlena A. Hamil, the complainant, had executed and delivered certain promissory notes for the sum of $1,450.00, payable to the American Freehold Land Mortgage Co., to become due on Dec. 1st, 1895, and to secure the payment of the sum due, executed a mortgage upon her land, which was described in the bill. And that whereas, the principal of said note remained partially unpaid, that Mrs. Hamil applied to the American Freehold Land Mortgage Co. for an extension of the time of the payment until Dec.

1st, 1900; that in consideration of said extension Orlena A. Hamil and Irby W. Hamil agreed to pay the balance of the principal remaining due at the time of the execution of said agreement; and it was especially stipulated that the mortgage theretofore given should be security for the payment of said sum and the interest accumulating thereon, and that they would perform all the agreements and conditions contained in the principal note and the mortgage securing the same at the time of the extension, and that upon default in the payment of any part of the debt as agreed in said extension note to mortgagee, it should have the right to foreclose the mortgage. This note was signed by both Orlena Hamil and Irby W. Hamil.

The respondent, the Freehold Co., filed an answer and cross bill in which it admitted the averments of the bill as to the ownership of the lands, but averred that on Jan. 12, 1891, Irby W. Hamil, husband of complainant, executed and filed for record a written "consent" under Code of 1886, § 2350, making his wife a free dealer. This answer then averred the following facts: That complainant on or about Jan. 12, 1891, offered a contract and an application in writing, to Loan Company of Alabama, employing the Loan Company to negotiate for her a loan of $2,000.00 on her lands. That the application and contract were declined by the Loan Company in the form and shape in which it was offered. Later, on Feb. 17, 1891, complainant executed another application and contract which is set out as an exhibit to the answer, and employs the Loan Company to negotiate for applicant a loan on her lands for $1,450.00, and agrees to execute notes to Loan Company as compensation to it for acting as broker in negotiating the loan, and also agrees to pay John Gamble, as attorney for applicant, a reasonable fee for taking this application, conducting correspondence, and making ample abstract of title to applicant's land, and in securing and paying over the same. The contract was signed by Orlena A. Hamil, and I. W. Hamil, her husband, expressed his assent in writing to the making of the contract by his wife. Thereupon, The Loan Company of Alabama did negotiate for her a loan of $1450 with the American Free-

hold Land Mortgage Co. for 5 years, payable in installments, and on 17th of February, 1891, complainant executed a mortgage on her lands, and on 18th February, 1891, the mortgage and notes secured thereby were delivered to respondent, the American Freehold Company, for the sum of $1,450, borrowed by complainant, and that respondent paid the complainant the sum of $1,450. A copy of the mortgage is attached to the answer, marked "exhibit B," and it is averred and the mortgage so recites, that said mortgage and notes described therein were given by complainant to secure her debt, and the property was her separate estate, and that her husband joined therein to express his assent and concurrence to the making of the mortgage and the notes; which said notes, as stated in the mortgage, evidence the amount borrowed by the complainant. At the time the complainant executed and delivered to the American Freehold Land Mortgage Company her note for $1,450, payable in five years' installments, and the mortgage to secure said notes, she executed the second mortgage to Loan Company of Alabama, to secure to the Loan Company its commissions or brokerage, and the mortgage on its face shows that it was given by complainant with the assent and concurrence of the husband.

It is then averred in the answer that complainant did not become security for her husband, but just the contrary appears from the transaction. That at the time complainant's mortgages and notes were executed and delivered to respondents, she also made and delivered an affidavit duly sworn to before an officer to the effect that said mortgage is now valid in law and in fact, and is a first lien upon said premises; that she made the above statement and representation for the purpose of procuring from American Freehold Land Mortgage Co. the money upon which the loan of $1,450 for the security of which the said mortgage is given. And respondent avers that complainant is estopped to deny that the debt is hers.

Respondent then denies that complainant joined with her husband in executing the extension agreement in

the sense that it was his agreement or his debt, but avers that just the contrary was true, and that it extended her notes and her debt, and her husband joined in to give his assent to become bound jointly on the notes; that the mortgage to Loan Company of Alabama, and the notes therein described, executed at the same time with the extension agreement were given by complainant to Loan Company to secure its brokerage in getting the debt of complainant carried over or extended, and the mortgage shows on its face that it was not known that the loan would be placed with respondent, or whether some other lender would advance the money to complainant, and this respondent closed said loan with complainant, at the time of the delivery of the notes and mortgage, and in good faith paid the money thereupon to complainant. That the Loan Company of Alabama, as a broker, applied to respondent, to lend the money to complainant, upon the faith and credit of notes, mortgages and other exhibits to the answer, and this respondent treated complainant as a borrower, and advanced the money without any notice to the contrary.

Orlena A. Hamil, I. W. Hamil and Loan Company of Alabama are made parties defendant, and the answer is prayed to be taken as a cross bill, and a declaration of validity of respondent's lien is prayed, and also for a foreclosure of the mortgage.

The answer of the Loan Company of Alabama to original bill adopts the answer of the American Freehold Land Mortgage Company, and in addition avers that the consideration of the mortgage to it was the service in procuring for complainant an extension of the mortgage of the American Freehold Land Mortgage Company, mortgagee; that complainant agreed to execute the mortgage as compensation to Loan Company, and that it acted for complainant under her contract, and not for her husband. For answer to cross bill, the Loan Company admits each and every allegation therein.

The answer of Orlena A. Hamil to the cross bill avers that the execution of the mortgage on the 18th February, 1891, was done by her only in the manner and for

[Hamil v. American Freehold Land Mortgage Co.]

the purpose as set forth in her original bill; and denies all the allegations of the cross bill not admitting the allegations of her original bill, and avers the facts to be as stated in her original bill, and she further demurs to the cross bill.

The answer of Irby W. Hamil to cross bill denies that the application and contract therein described was signed by his wife and by himself as her husband, and no such contract was signed by him or by his wife. He says that all the allegations with respect to an application for a loan by his wife are untrue, and that he applied in his own behalf, and for his own benefit, for the loan. He admits executing the notes and the mortgages, and that he received money. He denies that the transactions were his wife's, and states that "wherein it is alleged that complainant did anything in relation thereto as principal in said transaction, that it was in fact done by this respondent as principal."

The evidence showed that in the course of the negotiations for the loan which resulted in the American Freehold Land Mortgage Company making the loan, secured by the mortgage involved in this controversy, there was filed an application addressed to the Loan Company of Alabama for the negotiation of a loan for $1,450.00; that this application was signed "O. A. Hamil," and there was attached to it or written therein, the concurrence of I. W. Hamil to the making of said application and contract. In this application there was a contract by which O. A. Hamil employed the Loan Company of Alabama to engage and obtain for her a loan upon the mortgage security, and she also employed John Gamble, Jr., as her attorney "for taking the application, conducting the correspondence and making a complete abstract of title to my (her) lands, and securing and paying over the money, and all such work in connection with this loan." This application was not signed by the complainant, but her name was signed thereto by some one else, and she did not know of the application or the negotiations until the mortgage was presented to her for signature. It was also shown that she executed the notes for the loan to the American

Freehold Land Mortgage Company, and also the mortgages negotiated by her agents to said company; and made a final affidavit as to her ownership of the lands conveyed in said mortgage. This affidavit is copied in the opinion. The evidence for the complainant was to the effect that one J. B. Hilliard, who was the clerk for said John Gamble, Jr., and a notary public, brought two notes and mortgages and affidavits to her to obtain her signature thereto; that at that time her husband stated to her that he had borrowed some money and requested her to sign the papers; that said Hilliard asked her if she wanted to read the papers to which she replied that she would know no more after reading all the papers than before, and that Hilliard then stated that "that would be all right; that she was only signing them as security for money her husband had borrowed," and that thereupon she executed the papers without reading them over.

The evidence for the defendants showed that the American Freehold Land Mortgage Company knew all the facts pertaining to the negotiation, and that they made the loan upon the papers which were filed with them during the negotiations. The other facts of the case are sufficiently stated in the opinion.

Upon final submission of the cause upon the pleadings and proof, the chancellor decreed that the complainant in the original bill was not entitled to the relief prayed for, and ordered said suit dismissed. It was further decreed that the complainants in the cross bill were entitled to relief, and that the property described in the mortgage was subject to the satisfaction of the mortgage deed.

From this decree the complainant appealed, and assigned the rendition thereof as error.

A. C. WORTHY, for appellant.—Under the law in force in the Code of 1886, at the time the contract with the American Freehold Land Mortgage Co. was executed, and prior to the act of February 16, 1895, a married woman was incapable of incumbering her statutory estate by *mortgage,* even to secure her own debt

although her husband joins in the conveyance; and her mortgage is an absolute nullity.—*Conner v. Williams,* 57 Ala. 131; *Peebles v. Stolla, Ib.* 53; *Chapman v. Abrams,* 61 Ala. 108; *Gaus v. Williams,* 62 Ala. 41; *Thames v. Rembert,* 63 Ala. 562; 1 Jones on Mortgages (3d ed.) § 117.

When the written consent of the husband was filed and recorded as provided for in § 2350 of the Code of 1886, the wife was freed from all contractual disabilities in reference to the trade or business she was engaged in, necessary to the management or conduct thereof, and she could contract verbally, but, it had no effect or bearing upon her power to alienate her lands, under § 2348, Code of 1886.—*Strauss, Pritz & Co. v. Glass,* 108 Ala. 546.

In the case of *Vansandt v. Weir,* 109 Ala. 104, the court in construing § 2348 of the Code of 1886, and discussing the legislation abolishing equitable separate estates coming to the wife, creating and converting them into legal separate estates, uses this language: "We see further, that by the same legislation certain limitations and restrictions are attached to, or imposed upon the estates so created, prominent among which is the provision that her real property shall not be disposed of (save in certain specified contingencies), except by the *joint deed* of the husband and wife. This provision substantially obtained in our former married woman's law, so long in force, and frequently became the subject of judicial consideration in this court; and in our adjudications, it was well settled, that she was confined to the mode of disposition prescribed by the statute, which was by the *joint deed* in writing of herself and husband." See also *Canty v. Sanderford,* 37 Ala. 91; *Wilder v. Wilder,* 89 Ala. 414; *Steiner v. Tranum,* 98 Ala. 315, and cases there cited; *Curry v. American Freehold Land Mortgage Co.,* 107 Ala. 437.

FOSTER, SAMFORD & CARROLL and HUGH NELSON, *contra.*—It has been frequently held in this State that a party signing a contract such as was signed by Mrs. Hamil in this case whereby she employed the Loan Com-

pany of Alabama to negotiate a loan for her and ap-
pointed Gamble as her attorney to collect the money,
do the corresponding, etc., constitutes Gamble and the
Loan Company agents of the borrower (Mrs. Hamil),
and they are in no sense the agents of the lender.—*King
v. Scheuer,* 105 Ala. 361; *Edinburg Amer. L. M. Co. v.
People's,* 102 Ala. 241; *George v. New Eng. M. Sec. Co.,*
109 Ala. 552; *Am. Freeh. Land Mortgage Co. v. Thorn-
ton,* 108 Ala. 261.

Mrs. Hamil, by her negligence having put it into the
power of her husband to defraud this respondent when
the respondent was not at fault, if either must suffer
she must be the loser.—*Noble v. Moses,* 74 Ala. 604;
*Turner v. Flynn,* 76 Ala. 532; *Allen v. Murry,* 76 Ala.
10; *Young v. Lehman,* 63 Ala. 519. Transactions of this
kind are such that the courts of the country cannot af-
ford to annul on such testimony as is shown in this
case.  For the sake of the security of business trans-
actions, this married woman must be held to her con-
tract.  If her husband has misled her, it is her own
fault in relying on what he said; for the sake of the
security of business this must be upheld.—*Pacific Guano
Co. v. Anglin,* 86 Ala. 492.

The fact that the husband got the benefit of the money
advanced is of no consequence, provided the money was
paid out by respondent in the manner authorized by
complainant.  The bill fails to aver that she applied to
respondent for the money and expected to get it, but
denies that she ever applied for the loan, and denies
that she ever expected to receive it.  At any rate the
testimony shows that respondent was authorized to
pay over the money as it did, and the case in that as-
pect is concluded by *Edinburgh American Land Mort-
gage Co. v. Peoples,* 102 Ala. 241; *American Mortgage
Co. of Scotland v. King,* 105 Ala. 358; *George v. New
England Mortgage Sec. Co.,* 109 Ala. 552; *Land Mort-
gage I. & A. Co. v. Preston,* 24 So. Rep. 707.

TYSON, J.—It cannot now be a matter of serious
controversy that Gamble and the Loan Company of
Alabama were the agents of the complainant to negotiate
the loan for her, and not the agent of the Mortgage Com-

pany to whom the notes and mortgages executed by her in February, 1891, were negotiated. The same contract by which the Loan Company undertook to negotiate and did negotiate the loan for her has been frequently before this court, and we may say that substantially the same facts as shown by this record relative to the procuring of the loan and the means and methods adopted by the complainant to negotiate it, have been several times reviewed. It has been held on the questions here involved that the agencies employed were hers and not those of the lender.—*Land Mortgage and Agency Co. v. Preston*, 119 Ala. 290; 24 So. Rep. 707; *American Mortgage Co. v. King*, 105 Ala. 358; *Edinburgh American Land Mortgage Co. v. Peoples*, 102 Ala. 241; *George v. New England Mortgage Co.*, 109 Ala., 548.

It is a matter of no consequence, so far as the rights of the Mortgage Company are involved, what became of the proceeds arising out of the negotiation since it is not controverted that they were paid to Gamble, her agent, authorized in writing by her in conformity to the statute, to receive them.—*Hollingsworth v. Hill*, 116 Ala. 184; *American Mortgage Co. v. King, supra; Guin v. New England Mortgage Co.*, 92 Ala. 135; *American Freehold Land Mortgage Co. v. Thornton,* 108 Ala. 258.

The execution by the complainant of the application for the loan, and the notes and mortgage negotiated by her agents to the Mortgage Company and her final affidavit as to her ownership of the lands conveyed by the mortgage, is not denied by her. In her application for the loan known as "applicant's contract" is this language: "Whereas, I have this day employed the Loan Company of Alabama to negotiate for me a loan of $1,450 for the term of five years, with interest at the rate of .. per cent. per annum upon a note and mortgage securing the same, which shall be a first lien upon my farm in Pike county, Alabama." In the mortgage which she and her husband executed and authorized her agent to negotiate to the Mortgage Company, following immediately upon the description of the lands, is this recital: "It is understood that said lands are the

separate estate of the said Orlena A. Hamil, and that this mortgage and said notes are made with the assent and concurrence of the said Irby W. Hamil, her husband, hereby expressed in writing, and that the said Irby W. Hamil is jointly bound with his wife on said notes."

In what is known as her final affidavit, the most solemn of the three writings, made under the sanctity of an oath, we find she made this statement: "I, Orlena A. Hamil, of the county and State aforesaid, having on the 16th day of February, 1891, executed a mortgage to the American Freehold Land Mortgage Company of London, Limited, upon 318 acres of land in sections 11, 10, 14, 15, township 9, R. 19, particularly described in said mortgage and the abstract of title to said land made by John Gamble, Jr., dated 14 January, 1891, furnished by me to the said American Freehold Land Mortgage Company of London, Limited, do solemnly swear that no one has a better title in law or equity to said premises, etc.   *   *   *   that said mortgage is now valid in law and in fact, is the first lien upon said premises; and that I make the above statement and representation for the purpose of procuring from said American Freehold Land Mortgage Company of London, Limited, the money upon the loan of $1,450 for the security of which the mortgage is given, and for no other purpose whatsoever."  This paper bears date Feb. 17, 1891.

On this same day her agent Gamble made a draft on the Loan Company of Alabama for the $1,450 and forwarded the notes and mortgage to it to be negotiated to the Mortgage Company.

There is not an averment in the complainant's bill, nor an allegation in her answer to the cross bill of the Mortgage Company alleging any fraud in the execution of these papers.  There is not an intimation in her pleadings that she was induced by misrepresentations made by any person to sign these papers or that her signature to them was procured by fraud.  All that is alleged is, that the debt was not hers, but that of her husband.  It is upon this allegation in her bill and answer to the cross bill, that she seeks relief from im-

munity against the sale of her lands conveyed by the mortgage. The case might well end here, so far as fraud is concerned, upon the familiar principle, that fraud when relied upon as a defense or is made the basis for affirmative relief, must be specially pleaded.

In order to avoid the effect of her acts and declarations the complainant insists that as the notes and mortgage to the Mortgage Company were executed in 1891, prior to the passage of the act of Feb. 16, 1895, entitled "An act to amend § 2348 of the Code" (1886) and while the Code of 1886 was in force, that as to this mortgage she was under the disability of coverture at common law. A reading of the act of Feb. 16, 1895, (Acts 1894-5, p. 1138) will disclose that it simply conferred upon her the right to alienate or mortgage her real property without the assent or concurrence of her husband in certain contingencies therein named in which the law making power deemed the husband incapacitated by reason of insanity, or of becoming a nonresident of the State, or imprisonment for crime for a period of exceeding two years. Under the provision of the Code of 1886 (§ 2348), in the event the husband became incapacitated by reason of the happening of either of the contingencies above named, she could only sell her lands, and had no power to mortgage them. Neither of these provisions, however, affected her right to mortgage her real estate with the assent or concurrence of her husband when he had capacity to give his assent or concurrence. Full legal capacity was conferred upon her by § 2346 (Code, 1886) to contract in writing as if she were sole with the assent or concurrence of her husband expressed in writing. Under this section, there is no doubt that the wife could make a valid mortgage upon her property by conforming to the statutory requirements.—*Scott v. Cotton*, 91 Ala. 623. The papers show the money was loaned to her and not her husband, and the evidence shows that the money was paid to her agent. If it be a fact that the husband got the money and used it, the debt would be hers nevertheless.

The decree of the chancery court is affirmed.