138 So. 543

**H. M. PRICE HARDWARE CO. et al. v. MEYER et al.**

1 Div. 684.

Supreme Court of Alabama.

Dec. 17, 1931.

Stevens, McCorvey, McLeod, Goode & Turner, of Mobile, for appellants.

F. S. Coffin and Wm. B. & C. C. Inge, all of Mobile, for appellees.

**KNIGHT, J.**

The complainants in the court below, appellees here, leased to H. M. Price Hardware Company, Inc., the buildings and lots in the city of Mobile, Ala., locally known as Nos. 75–77–79, Dauphine street, for a term of nine years and nine months, for its business and purposes, as shown by its articles of incorporation. This lease ran from the 1st day of February, 1925, to and including the 31st day of October, 1931, the agreed rental price being $52,800, payable in monthly installments on the 1st day of each month thereafter during said term, the first fifty-seven installments being for $400 each, while the last sixty installments were for $500 each.

The lease contract contains certain conditions and stipulations, and, for a better understanding of this contract, we here set out those provisions which are presently pertinent and which seem to be the real basis of the contention between the parties:

"And the lessee further covenants and agrees that if the lessee should at any time, during the continuance of this lease, remove or attempt to remove the goods, furniture, effects, improvements and personal property brought thereon, out of or from said premises (except in the regular course of trade), without having paid in full all rent which shall become due during the term of this lease, or should an execution or other process be levied upon the goods and chattels of the lessee in and upon said premises and not within five (5) days thereafter released, or if a petition in bankruptcy be filed by the said lessee or if such petition in bankruptcy be filed against lessee and not immediately defended against by lessee, or an assignment be made for the benefit of the lessee's creditor or a receiver be appointed on petition filed against lessee and not immediately defended against or should the lessee violate any other condition of this lease, then in such case, or upon the happening of any one or more of such cases, the whole rent for the whole term of this lease shall at once become due and payable, and the lessors may proceed by attachment, suit or otherwise, to collect the whole rent reserved in the same manner, as if by the terms of this lease the whole rent for the entire term were payable in advance.

"And the lessee further agrees and covenants with the lessors that the furniture, goods, and effects which will be brought upon said premises will be owned by lessee.

"In the event of the employment of an attorney for the collection of any amount due hereunder, or for the institution of any suit for possession of said property, or for advice or service incident to the breach of any other conditions of this lease, or account of bankruptcy proceeding by or against the furniture and effects of the lessee, located upon the

leased premises, or the leasehold interest, the lessee agrees to pay and shall be taxed with a reasonable attorney's fee which fee shall be a part of the debt evidenced and secured by this lease."

The present bill is filed by the complainants, as lessors, to have the court decree that certain terms of this lease contract had been breached by the lessee; and to decree that the entire amount of the rent as for the entire term was due and payable at once; and to declare and establish a lien in favor of complainants as for rent due on certain goods "transferred and removed" by the lessee from the rented premises, and delivered to the respondents, the Underwood Coal and Supply Company, Inc., Kittrell-Milling Motor Company, Inc., Marston & Quina of Pensacola, Fla., R. J. Milling, and Capt. Nichols; and that, in the event the merchandise cannot be recovered, in specie, to enforce said lien against the parties, then for a money decree; and to decree that complainants have a lien upon the stock of goods, furniture, and fixtures located in the leased premises; and for a money decree against the defendant the H. M. Price Hardware Company for the sum of $21,000, the entire amount then unpaid under the rental contract; and for an attorneys' fee. The above statement sets forth the principal features of the specific prayer of the bill, and then there was the usual general prayer.

There was no offer in the bill to do equity or to submit themselves to the jurisdiction of the court.

So far as the bill shows to the contrary, the lessee was not in default in the payment of any installment of the rent, and, construing the bill against the pleader, we assume that each installment of rent was met promptly as the same fell due. Nor is there any averment of insolvency, or that the H. M. Price Hardware Company was embarrassed financially at the time of the filing of the bill, and we do not understand that such averments were necessary.

The insistence of the complainants is that there had been such a breach in the terms of the contract of lease that thereby they were authorized to exercise the option to declare the whole amount of the rent for the entire term due and payable at once. To give the lessee notice of this contention on their part, the lessors, under date of April 8, 1931, through their attorneys, notified the lessee, in writing, that he had made it optional with the lessors to declare the whole amount of the rent due, under the clause of the contract which reads, "And the lessee further covenants and agrees that if the lessee should at any time during the continuance of this lease remove or attempt to remove the goods, furniture, effects, improvements and personal property brought thereon, out of or from said premises (except in the regular course of trade), without having paid in full all rent which shall become due during the term of this lease * * * then, in such case, and upon the happening of any one or more of such cases, the whole rent for the whole term of this lease shall at once became due and payable, and the lessors may proceed, by attachment, suit, or otherwise, to collect the whole rent reserved in the same manner as if by the terms of this lease the whole rent for the entire term was payable in advance." In this notification, among other things, the lessors advised the lessee that they had elected to declare the whole rent for the whole term of the lease due and payable, and that the amount of the rent due was $21,000.

The complainants in their bill aver that the lessee had in and on the rented premises on January 1, 1931, a stock of merchandise of the value of $30,000, approximately, and that on April 1, 1931, and since, this stock of merchandise had been reduced to about $5,300. And it is averred that the larger part of the "difference between the value of the stock of merchandise on hand on January 1, 1931 and April 1, 1931, was removed in large lots and transferred and delivered to the Underwood Coal and Supply Company, Inc., Kittrell-Milling Motor Company, and Marston and Quina, of Pensacola, Florida, and to R. J. Milling, or his agent upon credits of less than the cost price of said merchandise, said transfers and removals of said merchandise being not in the regular course of trade"; and that much of it delivered to parties above mentioned was such class of merchandise as was not usually handled by the party to whom it was delivered.

It is also averred that the said R. J. Milling was the president of the H. M. Price Hardware Company, and the dominating stockholder, and the said R. J. Milling was and is affiliated and the dominating stockholder in the Underwood Coal and Supply Company, Kittrell-Milling Motor Company, and Marston and Quina of Pensacola.

It appears from the bill also that between the dates of January 1, 1931, and April 1, 1931, merchandise of the value of $1,500 to $2,000 was transferred and removed to Underwood Coal & Supply Company; that about $1,600 worth was transferred and delivered to Kittrell-Milling Motor Company; that between five and ten thousand dollars worth was delivered to Marston & Quina; and that about $1,000 worth was delivered to R. J. Milling, or his agent. It is also averred "that the said transfers or removal of the said stock of merchandise as set forth in paragraph six hereof, were not bona fide for value, without notice of the lien the law gives to your orators, but were transfers and removals of property at a price less than the cost, and delivery was made to the parties with

actual or constructive notice of your orator's lien."

While the bill avers that the terms of the lease contract were also violated by the lessee, in that he brought, or allowed to be brought, upon leased premises goods and•effects not owned by the lessee, the main insistence for relief is based upon the transfer and removal of goods, not in the regular course of trade upon "credits" of less than the cost price of said merchandise.

After the filing of the bill, the bankruptcy of the defendant H. M. Price Hardware Company, Inc., was suggested, and the court made and entered an order staying the cause as to that defendant, pending the final determination of the bankruptcy proceedings. This order was made on May 23, 1931, and on the 27th day of May thereafter, the defendants Underwood Coal & Supply Company, Kittrell-Milling Motor Company, and R. J. Milling filed a demurrer to the bill, Marston & Quina was not made a party to the bill. These demurrants filed numerous grounds of demurrer.

■ It is now too well established, by the decisions of this court,.that a landlord may proceed in equity to enforce his lien for rent, to need citation of authority to support the proposition. The remedy by attachment, given by the statute, is cumulative, and a landlord may proceed in either court, unless in the assertion of his lien equitable questions arise, and in which latter case resort to a court of equity should be had; but, broadly speaking, .a landlord may proceed in either court. Leader v. Romano et al., 208 Ala. 635, 95 So. 7; Carmen & Begg et al. v. Ala. Nat. Bank, 101 Ala. 189, 13 So. 581.

■ By the statute, section 8814, the complainants, lessors of the storehouse, had a lien on the goods, furniture, and effects belonging to the tenant, and subtenant, for their rent, but this lien may be lost by a sale or sales made to a purchaser in the regular course of trade. In the case of Weil v. McWhorter, 94 Ala. 540, 10 So. 131, 132, it is said: "It is the recognized doctrine of the common law of distress that, when a house is rented for mercantile purposes, it is the implied understanding of the parties that goods kept therein for sale may be disposed of in the usual course of the particular business, free from the claim for rent, and that the purchaser, though with full notice, it may be, that rent has accrued, takes them discharged from the landlord's lien; and on the principles laid down in Abraham v. Nicrosi, supra [87 Ala. 173, 6 So. 293], this doctrine must be held to obtain under our statute. The tenant in the present case appears to have been a dealer in paints, oils, wallpaper, and the like, and rented the storehouse from the plaintiff for the purpose of conducting that business therein. The usual course of trade in such business we appre-

hend to be the sale of the commodities constituting the stock of goods to persons who have need of them, for money either paid or to be paid."

This principle of law was recognized and given effect in the later case of Leader v. Romano et al., supra.

We apprehend that the term "usual course of trade" means nothing more nor less than the term regular course of trade, and that the two terms as employed in the bill in this cause mean one and the same thing.

■ It was within the right of the contracting parties to agree that the time for the payment of the rent might be accelerated, in certain contingencies, and the provision inserted in the contract of lease whereby it is stipulated that, "if the lessee should at any time, during the continuation of this lease, remove or attempt to remove the goods, the furniture, effects, improvements and personal property brought thereon, out of or from said premises (except in the regular course of trade), without having paid in full all rent which shall become due during the term of this lease, * * *" is reasonable, and will be enforced in a proper case. 36 Corpus Juris, 1201; 16 R. C. L. 929, 930; John Ingle, Ex'r v. Chas. S. Wallach, 1 Wall. 61, 17 L. Ed. 680. The lessors gave timely notice of their election to declare the entire rent for the full term due and payable at once.

The question presented is, Do the averments of the bill bring lessors' case within the terms of the stipulation for the acceleration of rent payment? The demurrer aptly raises this point. If the lessee, in fact, violated or breached the terms of the lease contract providing that the goods should not be removed "out of or from" the rented premises (except in the regular course of trade) without having paid all.rent which would become due during the term of the lease, the lessors were armed by the contract with the right to declare all rent due for the term and to proceed to its collection. If, however, the goods were removed from the rented premises in the regular course of trade and for value paid or to be paid to lessee, then there was no breach of the special contract brought forward in this case; and the defendants would, independent of the exception in the contract, be protected by the law declared in the case of Weil v. McWhorter, supra, in their purchases.

■ While it is averred that R. J. Milling was the president of H. M. Price Hardware Company, and the dominating stockholder in the Underwood Coal & Supply Company, Kittrell-Milling Motor Company, and was himself one of the purchasers of the goods of the H. M. Price Hardware Company, yet we know of no rule of law, nor have we been cited to any, which would prevent a president of a corporation from purchasing, in the

regular course of trade, merchandise from such corporation, provided he paid the fair market value therefor. The articles of incorporation of the H. M. Price Hardware Company are not set out in the bill, nor are we informed by anything averred therein whether this corporation was engaged in the wholesale or retail business; therefore, as against the pleader, we might assume the position that it was engaged in the wholesale business, and therefore the averment that the goods were removed in dray lots would mean nothing.

■■ The averment that the goods were transferred to these demurrants at a credit less than cost price is far from an averment that they were sold for less than their fair and reasonable market value. There is no hint in the bill as to when the goods were bought, nor what their condition was when sold and transferred. We all know that the value of merchandise constantly fluctuates—up and down. Therefore the averment that the transfers were made at a price less than the cost price does not tend in the least to support the averment that the goods were not sold in the regular course of trade.

■ Usual course of trade has been defined by this court in the McWhorter Case, supra. It means in mercantile business (the business the said H. M. Price Hardware Company was engaged in) the sale of the commodities constituting the stock of goods to persons who have need of them, for money either paid, or to be paid. This definition was given by Justice McClellan, afterwards the Chief Justice of the court, and since the opinion in the McWhorter Case was rendered it has been often referred to with approval in this court. The complainants had the burden of averment, and this burden can only be met by statement of facts, not legal conclusion. There is nothing stated in the bill which supports the conclusion of the pleader in this aspect of the case. For aught averred to the contrary, these respondents needed the goods they bought, paid full market price therefor, and same were delivered to them. It may be that there was a purpose in the mind of R. J. Milling as to purchases made by him to ultimately circumvent the complainants, and to prevent their collection of rent later maturing, but, if so, on that point the bill is silent, except for what is averred in paragraph 7 of the bill, in which the complainants aver the said transfers or removals of the merchandise, as set forth in paragraph 6, were not bona fide sales for value, without notice of the lien the law gave to lessors, but were transfers and removals at prices less than cost, and delivery was made to the parties with actual or constructive notice of the lessors' lien. This averment may be paraphrased thus: That the parties paid less than cost price, with knowledge that the

lessors had a lien on all goods of the lessee for rent, and therefore the sales were not bona fide sales, for value.

When one presents his case, by bill, for relief, he must aver facts and not rely upon inferences. As said in Duckworth v. Duckworth's Adm'r, 35 Ala. 70, 74, 75: "It is a cardinal rule, founded in reason and good sense, that the bill should state the title or claim of the complainant with accuracy and clearness, and with such certainty that the defendant may be distinctly informed of the nature of the case which he is called upon to meet. If the facts essential to the right of the complainant are not clearly and unambiguously alleged, the defect will be fatal; for no facts are properly in issue, unless charged in the bill, and no proof can be made of, or relief granted for facts not charged. * * * It is true that some, if not all of these facts, might be inferred from other statements in the bill; but the matters essential to the complainant's right to relief must appear, not by inference, but by direct and unambiguous averment." See, also, Savannah & Memphis R. Co. v. Lancaster et al., 62 Ala. 555–562; Tutwiler v. Dugger, 127 Ala. 191, 28 So. 677.

We are at the conclusion that the demurrer pointing out these defects in the bill should have been sustained.

■ The bill also seeks to declare and to enforce a lien upon the goods purchased by and delivered to Marston & Quina, of Pensacola, Fla.; yet this concern is not made a party to the bill. We mention this, for, if this is to be pressed, the said Marston & Quina must be made a party defendant to the bill.

■ This brings us down to a consideration of the suggested bankruptcy of the defendant the H. M. Price Hardware Company, Inc. Nothing can be clearer to our minds than that the mere suggestion of the bankruptcy of this defendant does not make the trustee a party to the bill, nor bring this matter before the court, when considering the demurrers to a bill filed before the adjudication of bankruptcy. It was proper, of course, to suggest, as was done in this case, the bankruptcy. McDonald v. McMahon's Adm'r, 66 Ala. 115.

With the suggestion before the court, the complainants may, if they are so advised, and deem it necessary, amend their bill by bringing in the trustee, and, if they should not do so, then the absence or nonjoinder of the party may be taken advantage of by special plea, or by the answer of the parties. It would seem that, so far as the present consideration of the bill on demurrer is concerned, the suggestion of the bankruptcy of this defendant cannot be considered. It presents matter not within the issue presented by the bill and demurrers thereto. It may be that

the trustee, if brought in, will not care to pursue the property sought to be charged with the lien, for he may be of the opinion that it would be a burden upon the trust estate that he would not desire to assume, and, in which event, doubtless he would file a disclaimer, renouncing for the trust estate any claim to the property. But, until he has taken such a position, it cannot be known what his attitude will be.

The fact of the bankruptcy of the defendant the H. M. Price Hardware Company not appearing upon the face of the bill, the absence of the trustee as a party must be raised by plea or answer, and not by demurrer. Until, by the pleading, this question is presented, the court will not pass upon the question as to whether the trustee is, or is not, a necessary party. Anything we might say in that regard would be dictum.

In respect to that part of the bill which sets up the fact that the lease contract has been breached by the lessee bringing upon, or allowing to be brought upon, the leased premises, goods and effects not owned by lessee, we think the averments in this particular entirely too meager, and that the demurrer pointing out this aspect is also well taken. The bill should show with some reasonable degree of particularity, at least, what goods or effects not ' owned by lessee were brought upon the leased premises and the nature of the same, and the approximate time when they were brought upon the premises.

This provision of the contract is in the nature of a forfeiture, and cannot be lightly considered by the court. To hold that a lessee would be liable to accelerate the payment of rent simply because he brought, or allowed to be brought, goods or effects not belonging to him upon the leased premises without regard to the amount of same, or the purposes for which they were brought, might be most shocking. Let the bill, if this breach is to be insisted upon, be more specific. Both the court and the defendant are entitled to know just what is relied upon in this particular.

It follows that the decree of the circuit court will be reversed, and a decree here rendered sustaining the demurrer to the bill.

Reversed and rendered.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.