(19 App. Div. 321.)

## McGRATH v. SAYER.

(Supreme Court, Appellate Division, First Department. June 25, 1897.)

ATTACHMENT—DISSOLUTION—EVIDENCE.

Upon a motion to vacate an attachment granted on the ground that the defendant was intending to dispose of his property to cheat his creditors, it appeared that the only evidence of such intent was two conversations of defendant,—one with the plaintiff, in which defendant was alleged to have said (after complaining that he would be unable to pay his debts unless he could get more for his business than the plaintiff was willing to give) that, if he was compelled by force of circumstances to sell out his business piecemeal, he should get even with his principal creditors; and another conversation with an employé of plaintiff, in which defendant was alleged to have said that·he was going to leave the state, and his creditors would get nothing. Defendant denied both conversations. *Held*, that the intent to defraud creditors was not established, and the attachment should have been vacated.

Appeal from trial term.

Action by Edward McGrath against Octavio Sayer, Jr. From an order denying a motion to vacate an attachment, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, INGRAHAM, and PARKER, JJ.

Frank Harvey Field, for appellant.
Thomas Reigo Hart, for respondent.

PARKER, J. The papers upon which the attachment was granted were perhaps sufficient to support it, on the ground that the defendant was intending to dispose of his property for the purpose of cheating and defrauding his creditors. But, on the motion to vacate the attachment, certain affidavits were filed by the defendant, which, when considered in connection with the plaintiff's papers used on the motion,

called for the vacation of the attachment.    The provisional remedy
of attachment is a severe one, and should not be sustained when grant-
ed unless the proof fairly warrants it.    This seems to be a case where
this remedy was resorted to for the purpose of obtaining an unconscion-
able advantage over a defendant.    The defendant prior to May 4,
1897, was a manufacturer of fancy metal and glass goods at 135 West
Twenty-Third street, New York City.    The plaintiff was his book-
keeper and general manager.    Negotiations between these men for
a purchase and sale of the property had resulted in a contract, dated
on the day above mentioned, by which the defendant agreed to sell
part of his business to the plaintiff, and to make the transfer on the
6th day of May, two days later.    The consideration agreed upon was
$2,250, of which $650 was to be paid in cash, and the balance in long-
time notes.    The plaintiff wished to retain the premises which de-
fendant had leased, and the agreement provided that he should give
a bond to secure the payment of rent to the landlord.    May 6th the
defendant refused to deliver the business to the plaintiff, and the rea-
son given was that the security for the payment of the rent proposed
by the plaintiff was not satisfactory.    No effort seems to have been
made by the plaintiff to procure another surety, but two days later
he commenced this action against the defendant for breach of the
contract, laying his damages at $9,500,—over four times the entire
purchase price of the business.    In this action the attachment now
before the court was obtained, with the necessary result that the busi-
ness of the defendant has ever since been tied up.    The affidavits upon
which the attachment was issued were made by the plaintiff and one
of his employés.    The conversation which the plaintiff alleges that
defendant had with him took place some time prior to the date of the
contract, and was as follows:

"I have been cheated by nearly every one I have had business dealings with,
and, as a result, I cannot see my way clear to square up my indebtedness un-
less I can get a better price for the business than you seem to be willing to
pay; and, if I don't sell the business to you, I shall sell it out piecemeal, for
the best price I can get for it, and go to South America, where my father
wishes me to look after some business interests for him. If I am compelled by
the force of circumstances to do this, I shall get even with my principal cred-
itors."

If this conversation took place,—and the defendant strenuously
denies it,—there was but one expression in it which tends in any way
to show what the plaintiff was bound to show, namely, that the de-
fendant was intending to dispose of his property for the purpose of
cheating and defrauding his creditors.    He is made to say, after
some grumbling about his misfortunes and the treatment he has re-
ceived from those with whom he has done business, that, if compelled
to sell out, he should get even with his principal creditors.    But,
assuming the making of this expression, it does not necessarily mean
that the defendant intended to prevent his creditors from receiving
the proceeds of his property.    He had already complained that, unless
he could get more money out of it than the plaintiff seemed to be
willing to give him, he would not have enough to square up his in-
debtedness; that he would have to sell it out by piecemeal, for the
best price he could, and it would not prove sufficient to pay his cred-

itors; and thus it was made to appear that, with the best of intentions, he "would be compelled by force of circumstances to get even with his principal creditors." Plaintiff's employé, Racey, in his affidavit states a conversation which he says occurred on the 28th day of April, 1897, in which the defendant said "that he was just as anxious to close the negotiations as the plaintiff was, and for the reason that he was going to leave the state, and his creditors would get nothing." This testimony the defendant denies in the most explicit and positive manner. This denial, considered in connection with all the other facts and circumstances appearing in the papers, satisfies us that, upon the motion to vacate the attachment, it did not then satisfactorily appear that the defendant had ever intended to dispose of his property for the purpose of cheating and defrauding his creditors, and the motion should have been granted.

The order should be reversed, with $10 costs, and a motion to vacate attachment granted, with $10 costs. All concur.