# Seals Piano & Organ Co. *v.* Bell, *et al.*

### Action for Rent.

(Decided Feb. 5, 1916.   Rehearing denied March 30, 1916.
71 South. 340.)

1. **Landlord and Tenant; Rent; Attachment.**—It is actual and not constructive fraud which warrants attachment for the rent not due where the tenant has or is about to fraudulently dispose of his goods.   (§ 4748, Code 1907.)

2. **Same; Evidence.**—Evidence of an attempt to remove the tenant's goods, without the knowledge of the landlord to another city there to be mingled with other goods on which the landlord had no lien, the tenant being solvent, did not show a fraudulent disposition of the goods within the purview of § 4748, Code 1907.

3. **Same.**—The removal of goods under such circumstances of secreting or hiding as would show intent to deprive the landlord of his lien is a fraudulent intent authorizing attachment within § 4748, Code 1907.

(Gardner, J., dissents.)

APPEAL from Montgomery City Court.
Heard before Hon. W. W. PEARSON.
Action by N. J. Bell and others begun by attachment against the Seals Piano & Organ Company, to enforce a landlord's lien for rent not due.   Judgment for plaintiffs and defendant appeal. Affirmed in part, and in part reversed and rendered.

TILLEY & ELMORE, and WILLIAM A. GUNTER, for appellant.
RUSHTON, WILLIAMS & CRENSHAW, for appellee.

MAYFIELD, J.—On rehearing the majority of the court have reached the conclusion that we were wrong in holding that the trial court committed no error in its findings on the plea in abatement of the writ of attachment.   The plea merely denied the existence of the ground of attachment alleged in the affidavit. Issue was joined, and trial was had by the court without a jury, the court finding the issue in favor of the plaintiff and overruling the plea.   In this ruling we now hold the trial court erred; the plea should have been held good and the writ of attachment quashed; and such judgment will be here entered as the trial court should have entered.

(1) We are led to this conclusion for the following reasons: The sole ground alleged in the affidavit which authorized the issuance of the attachment was the first ground mentioned in section 4748 of the Code, as for rent not due, which reads as follows: "When the defendant has fraudulently disposed of his goods or is about fraudulently to dispose of his goods."

The plea put in issue the facts alleged. This ground of attachment is similar to, and in legal effect the same as, grounds 6 and 7 under section 2925 of the Code, relating to attachments by general creditors. The language of this last statute has been construed by this. court to mean actual fraud, as distinguished from constructive fraud.

It was ruled by this court in the case of *Durr v. Jackson,* 59 Ala. 207, that fraudulently withholding property, as used in the attachment statute, must involve "actual fraud and evil intent to defraud creditors." Our statutes have been frequently readopted with this construction placed on them; and we see no reason why similar language in a statute giving the landlord a lien and providing for its enforcement by attachment should receive a different construction so far as the statutory grounds for issuing are concerned. This seems to be also the construction placed on similarly worded statutes by English and American authorities. The rule is thus stated in Ruling Case Law, vol. 2, § 27, p. 821: "A decided preponderance of authority supports the rule that a mere constructive fraud—that is, an act involving no positive wrong, the invalidity of which arises entirely from the provisions of law—will not warrant an attachment upon the ground of fraud."

(2) We find no evidence in this record sufficient to show "fraud" in the disposition of the defendant's goods, in the sense in which the term is defined above, by our court and other courts, when referring to grounds for an attachment. The most that is shown is a removal of the goods without the knowledge or consent of the landlord, in a way that might impair or destroy the lien given by the statute. This alone, we now hold, is not sufficient to show "actual fraud" or "intent to defraud" the creditor, and to authorize the issuance of the attachment. It is shown that the debtor or tenant is perfectly solvent; and no act is shown, other than the removal of the goods from Montgomery, Ala., to Birmingham, Ala., and there mingling the same with others upon which this landlord has no lien. The mere removal

[Seals Piano & Organ Co. v. Bell, et al.]

of the goods from the rented storehouse or premises, without more, is not a ground for attachment as for rent not due, and is not the equivalent of a fraudulent disposition of the goods, for the reason that section 4739 of the Code, relating to landlords of agricultural lands, makes a removal of the goods from the rented premises a ground for attachment, while the section under consideration, relating to landlords of storehouses, dwellings, etc., contains no such provision. These statutes should be construed in pari materia, and this difference in the two statutes is perfectly apparent from a reading of the two together. To construe section 4748 as authorizing the issuance of the attachment for a mere removal of the goods from the rented premises is to read into it provisions which the Legislature omitted from it, and which they inserted in section 4739.

(3) Of course, if the removal of the goods from the premises should be under such conditions and attended with such circumstances, as secreting. hiding. etc., as would show intent to deprive the creditor of his debt and lien. then this would authorize the inference of actual intent to defraud the creditor, and might therefore warrant the issuance of the attachment. But no such facts are shown by this record, and therefore we are not warranted in inferring such fraud as is meant by the statute.

It therefore follows that the finding by the court to the effect that grounds for attachment existed and that the writ properly issued was error; and a judgment will be here entered quashing the writ of attachment, because wrongfully issued.

The judgment against the defendant for the rent due as claimed in the complaint, however, is not reversed or disturbed, but is held to be proper and valid. In fact, there is no assignment of error as to the main judgment, and no insistence that it was erroneous or improper; and it is therefore affirmed. This judgment would have been proper and without error, if the trial court had found in favor of the defendant on the plea in abatement, as we hold it should have done.

Let the judgment of this court be entered in accordance with this opinion.

Affirmed in part, and in part reversed and rendered.

ANDERSON, C. J., and McCLELLAN, SAYRE, SOMERVILLE, and THOMAS, JJ., concur. GARDNER, J., dissents.

GARDNER, J.—I cannot concur in the opinion of the majority, and will here state briefly my views.

Appellant, a corporation under the laws of Alabama, doing a large business in this state and elsewhere in the purchase and sale of pianos and organs, and with its principal place of business in Birmingham, Ala., rented for a term of three years storerooms in what is known as the Bell Building, located in Montgomery; the same being property of the appellees. Appellant kept in said stores a stock of goods consisting of pianos and organs and continued to do business there until August 7, 1913, when the lease contract had yet 14 months to run. Appellant concluded to cease business in Montgomery and to move its stock of goods to Birmingham, there to be mingled with its stock in its rented store in that city, which stock consisted of pianos and organs of the same character and manufacture. Effort was made to get appellees to discount the notes for the rent yet to accrue, but the parties could not agree. Without notifying appellees of its intention, appellant then commenced moving its stock; and a large portion thereof had been loaded on cars at the depot, and the remainder was being prepared for shipment, when the attachment in this cause was levied. There had been sued out, just prior to the attachment in this cause, an attachment for past-due rent amounting to $300, but this was paid, and this past-due rent therefore was not treated by counsel as material to this cause. At the time the attachment here involved was sued out there was no rent past due. The affidavit made in support of the attachment stated as a ground therefor that it was for rent past due, but before the trial was had this affidavit was amended so as to state as cause for the attachment that the defendant was about to fraudulently dispose of its goods.

Upon the trial of the cause issue was taken by defendant upon the truthfulness of the affidavit as amended, which issue came on to be heard by the court without a jury. The court, upon hearing the testimony, reached the conclusion that on the evidence adduced the defendant was, within the meaning of the statute, about to fraudulently dispose of its goods as against the rights of its landlord, and thereupon overruled the plea in abatement. This is the question of prime importance for determination. The evidence shows that the defendant was entirely solvent; and there is no testimony in reference to any disposition, or intent to dispose of, defendant's goods, otherwise than in due

course of sales, except that in reference to its intention to remove the said goods from defendant's store in Montgomery to its rented store in Birmingham without the knowledge and consent of plaintiffs, and where these goods would be mixed and mingled with other goods of like character for sale in said store.

It is insisted by counsel for appellant, and agreed to by the majority, that to authorize an attachment for rent not yet due upon the ground that the tenant is about to fraudulently dispose of his goods (Code 1907, § 4748) there must exist, and the proof must tend to show, actual fraudulent intent on the part of the tenant to "cheat" the landlord. It is further insisted that the word "dispose," used in the Code section referred to, means assign, sell, or transfer, and that so long as the tenant retains the title and custody of his property there can be no disposition thereof in the sense of the statute. In the case of *Builders' Supply Co. v. Lucas,* 119 Ala. 202, 24 South. 416, this court had under consideration a statute which provided: "That every person who sells, removes or otherwise disposes of property subject to execution, with the intent to hinder, delay or defraud his creditors," should be punished.

It was there said: "The word 'sells,' as used in the statute, implies a divestiture of title by the debtor, and the words 'disposes of,' if they do not mean the same thing, imply some act of the debtor operating on the property itself to place it beyond the reach of creditors, such as removal or secreting of the property."

I need not dwell further on this insistence. It is clear to my mind that the word "dispose," as used in the said statute, should not be construed as being confined to a transfer of the title, but as "implying some act of the debtor, operating on the property itself, * * * such as removal or secretion of the property." I revert, therefore, to a consideration of the insistence that there must appear, within the meaning of said subdivision, an actual fraudulent intent on the part of the tenant to justify the attachment. The lien given by this statute attaches from the commencement of the tenancy for the security of the rent when it matures, and it "attaches for the whole rent, for the entire term, upon all the property belonging to the tenant which 'enjoyed the protection of the premises for which the rent is claimed,' so long as the property can be found and identified, provided it has not come into the hands of a bona fide purchaser for value without

[Seals Piano & Organ Co. v. Bell, et al.]

notice of the lien."—*Nicrosi v. Roswald,* 113 Ala. 592, 21 South. 338; *Andrews Mfg. Co. v. Porter,* 112 Ala. 381, 20 South. 475.

And from *Weil v. McWhorter,* 94 Ala. 543, 10 South. 132, we quote: "It is recognized doctrine   *   *   *   that, when a house is rented for mercantile purposes, it is the implied understanding of the parties that goods kept therein for sale may be disposed of in the usual course of the particular business, freed from the claim for rent, and that the purchaser, though with full notice, it may be, that the rent has accrued, takes them discharged from the landlord's lien.   *   *   *   The usual course of trade in such business we apprehend to be the sale of the commodities constituting the stock of goods to persons who have need of them, for money either paid or to be paid.   *   *   * Sales for money take nothing out of the business; indeed, they add to the capital of the business to the extent of the profits which it is to be presumed are made, increase the tenant's ability to pay rent, and enable him to buy other goods which become subject to the lien and afford security to the landlord until they are in like manner disposed of. ⁻And these considerations afford additional reasons for the law's implication that goods thus sold are by the intendment of the parties discharged of the lien. Not so with respect to a sale in payment of and for the purpose of paying an antecedent debt. This may be beneficial to the tenant, but it cannot be otherwise than detrimental to the business from the point of view of the landlord. The property taken out of the business by such transaction is not replaced by other property, or by money with which to buy other property upon which the lien would become operative. The tenant's ability to pay rent is lessened. The landlord's security is decreased. Such transaction can in no just sense be said to be necessary in the prosecution of the business. And every reason for an implication for an intendment between the parties that property so disposed of shall be discharged of the lien is wholly lacking. All this is true, moreover, as well with respect to a sale of any part of the stock upon such consideration as to a sale of the whole of it."

A lien given the landlord in a case of this character is superior to all other liens except those for taxes.—Code 1907, § 4747. It makes the landlord more or less independent of the solvency or insolvency of the tenant. In this case appellant, charged with a knowledge of the law, placed its stock of goods in the appellee's store, and the lien attached thereto as security for the rent.

Without the knowledge or consent of the landlord appellant was proceeding to dismantle its fixtures and remove its entire stock to its rented store in Birmingham. Such being the case, the record shows an intention on the part of the tenant to remove its property covered by the lien of the landlord in such manner and to such place as to lose its identity and thereby to destroy the lien—all without the landlord's knowledge or consent. I am of the opinion that such a destruction of the lien would be a fraudulent. disposition of the goods, as against the rights of the landlord, and within the meaning of the statute, although the tenant may have had no actual intent to cheat and defraud. He nevertheless had the intent, or such would be the necessary consequence of his act, to utterly destroy, without the knowledge or consent of the landlord, the latter's lien for his rent. This would be a willful disregard of the rights of the landlord and a willful destruction of the lien given him by the statute.

The reason of the majority would permit the tenant to remove the entire stock of goods beyond the confines of the state, and the landlord would be compelled to stand impotently by and see his lien destroyed unless he were able to show that the tenant acted with the actual intent to cheat and defraud him. Such a construction of the statute would render the lien of the landlord of extremely doubtful value, and in such a construction I cannot concur. Counsel for appellant, in support of his contention that there must be fraud in fact—that is, that the tenant must have the intent to cheat and .defraud—cities the case of *Cuendet v. Lahme*, 16 Kan. 527; *Robinson v. Melvin*, 14 Kan. 484; *Donelly v. Stanton*, 6 Misc. Rep. 168, 27 N. Y. Supp. 124; and *McGrath v. Sayer*, 19 App. Div. 321, 46 N. Y. Supp. 113. The cases cited from the Supreme Court of Kansas relate to suits by ordinary creditors without any lien, in which attachments were sued out upon the ground that the defendant had disposed of his property "with the intent to defraud, hinder, and delay his creditors." The two cases from the New York court were of like character, and the attachments were sued out upon the ground that "the defendant was intending to dispose of his property for the purpose of cheating and defrauding his creditors." The cases of *Weare Co. v. Druley*, 156 Ill. 25, 41 N. E. 48, 30 L. R. A. 465, was also of like character as the above quoted, as well as the cases cited in the note thereto, wherein the author of the note states that the preponderance of authority supports the rule that con-

structive fraud will not warrant an attachment upon the ground of a disposition of property "with intent to defraud." The cases cited in the note show, however, that some jurisdictions hold to the contrary. But these authorities are not here in point, for the reason that they deal with attachments by ordinary creditors without a lien, and in most instances with statutes using the language "with intent to defraud."

The majority opinion places stress also upon section 2925 of the Code, which relates to attachment by general creditors, but the analogy is wholly lacking, because there is no lien interfered with or destroyed. A reference to the citation in the majority opinion of 2 Rul. Case Law, 821, will disclose that the author there was likewise considering attachment by a general creditor, and not a case where a specific lien was involved. I cannot see that the fact that the attachment law as to agricultural tenants makes a removal of the goods from the rented premises a ground of attachment, while the section here under consideration contains no such provision, should be accorded the weight given it in the majority opinion. The reasons applicable to the one are not applicable to the other. The very nature of the business of a tenant of a storehouse would prevent any such provision being inserted in the statute, because his goods are placed in the store to be disposed of, to be removed, and a statutory provision similar to that in regard to agricultural tenants would really seem to hinder and prevent the very purpose of the tenancy.

In 4 Cyc. 419, is cited the case of *Locks v. Boles*, 14 Ky. Law Rep. 573, which is also cited in 5 Cen. Dig. 334, holding as following: "Where a creditor has a lien on goods, and they are about to be sold in violation of his right, he can have a specific attachment without alleging or proving an actual fraudulent intent on the part of the debtor."

But the value of this case as an authority is lessened by the fact that the report of it is not found in our library.

In the instant case we are dealing with a lien on the entire stock of goods for the rent for the entire term, which could be lost only by a sale to a bona fide purchaser without notice of the lien, or by a sale in due course of trade. It cannot be insisted that the removal of the entire stock of goods in the instant case was in due course of trade. That they were to be disposed of after being mingled with the stock of goods in Birmingham in due course of trade is entirely immaterial, as it was the removal

of the entire stock from the store of the landlords, without their knowledge or consent, against which they have here protested as being in fraud of their rights, and not the contemplated sale of the goods in the usual course of business in Birmingham.

Nor does it seem that the solvency of the appellant can be a matter of material importance in this particular case. The statute gives a lien to the landlord that he may look to the stock of goods, the tangible property, as security for his rent, and does not contemplate that the solvency of the tenant should be sufficient to authorize the lien's destruction. Indeed, I understand the learned counsel for appellant to concede or recognize in his brief that the question of solvency has little bearing on the result of this appeal, as on page 25 of his printed brief he says: "The question is: What is the law as to the right of a tenant, whether he is worth nothing or a million, to remove his stock of goods from one store to another, without his landlord's consent there being no intent (other than such as results as matter of law from such removal) to fraudulently dispose of his goods?"

It is settled in this state that as to existing creditors a voluntary conveyance by a debtor is by presumption of law fraudulent and void, though there is an entire absence of any fraudulent intent, and though the donor is entirely solvent.—*Bibb. v. Freeman*, 59 Ala. 612; 3 Mayf. Dig. p. 861, et seq. Such a conveyance is designated as fraudulent and void as against existing creditors because it is fraud upon their rights in law. I am unable to see how it requires any strained construction to hold that the word "fraudulent," used in the statute, includes a disposition of the goods fraudulent in law as against the rights of the landlord such as is here indicated by a deliberate and intentional destruction of the lien given by statute, without the knowledge or consent of the landlord. The lawmaking body has been most careful to give such a landlord a lien for his protection superior to all other liens, except those for taxes; and it appears to me entirely consistent to construe the statute as forbidding an utter destruction of that lien by the tenant, and thereby leave the landlord helpless unless he can show an actual intent to cheat or defraud. Such a destruction of the lien is a fraud upon the rights of the landlord, and in law is therefore a fraudulent disposition of the property.

I respectfully dissent.