152 So. 222

**MADDOX v. HOBBIE et al.**

**3 Div. 77.**

Supreme Court of Alabama.

Jan. 18, 1934.

L. A. Sanderson, of Montgomery, for appellant.

Files Crenshaw, Jr., of Montgomery, for appellees.

KNIGHT, Justice.

It appears from the bill in this cause that Henry M. Hobbie, one of the appellees, on the 30th day of August, 1930, was the owner of a certain storehouse, dwelling house, and some land connected therewith, or near thereto, in Montgomery county, Ala., and about twelve miles from the city of Montgomery, on the Woodley road. On said day he entered into a lease contract with appellant, whereby he leased said property to appellant for a term commencing on December 1, 1930, and to run to December 1, 1931, at an agreed rental for the year of $200, payable $8.33 on the first of each month, "beginning December 1st, 1930, and extending through and inclusive of Octo-

ber 1, 1931, and $108.37 on the 1st day of November, 1931." The contract with reference to the term of the lease contained this provision: "It is understood and agreed that this lease is for the period from December 1, 1930, to December 1, 1931, and that the party of the second part (J. L. Maddox) has the privilege of renewing this lease for an additional five years from December 1, 1931, to December 1, 1936."

The lease contract also contained the following provision: "And as a part of the consideration of this lease, in order to secure the prompt payment of said notes as they become due by virtue of this lease, the said party of the second part hereby gives and executes to the said party of the first part this instrument as a lien upon any and all property owned by said party of the second part, whether exempt from execution or not, and hereby waives all right which he or she may have under the Constitution and laws of Alabama or any state in the United States of America, to have any of the property of the said party of the second part, whether exempted from levy and sale under legal process." (Evidently something omitted.)

The lease contract also contained an acceleration clause as to the payment of the rent, to the effect that, if the party of the second part should fail in business, or should "fail to pay any one of the above described notes or installments of rent at maturity, then all the remaining installments shall at once become due and payable, and the party of the first part may treat them as due and payable, without further notice to the party of the second part, this contract being sufficient notice," etc.

It further appears from the bill that the said Maddox entered into the possession of said property under said lease contract, and has continued in the possession and enjoyment of the same down to the time the bill in this cause was filed, viz., August 10, 1933.

It is also made to appear from the averments of the bill that the appellee Henry M. Hobbie, some time during the month of December, 1930, the exact day not appearing, sold and conveyed the property, leased to said Maddox, to the appellee H. M. Hobbie Realty Company, Inc.

It is averred that the said tenant, J. L. Maddox, failed to pay a large number of the installments of rent described in the lease at their maturities, and that there was rent past due at the time the bill was filed to amount of $328.16; that, under the provisions of the lease contract, the default had the effect of maturing all rent installments for the entire term. It appears that, with all installments treated as due, the amount owing by appellant at the time the bill was filed was the sum of $1,069.85, $125 of which represent installments remaining unpaid to appellee Hen-

ry M. Hobbie during the original term of the lease, and it is averred that the balance of said sum of $1,069.85 was due and owing to the appellee H. M. Hobbie Realty Company, Inc.

In the third paragraph of the bill, it is averred that the said Maddox is the owner of certain personal property, described in the paragraph, and all of which, except the designated live stock, is upon the property leased to the appellant. It may be here stated that a part of said personal property is a stock of general merchandise, and which is averred to be in the storehouse rented by Hobbie to said Maddox.

The complainants, the appellees here, prayed, among other things, that the court will decree that they have a lien upon any and all property owned by the defendant Maddox for the satisfaction of the sum due by virtue of the said lease, and specifically upon the property described as being the property of said Maddox, and that the court will order the same to be sold, or so much thereof as is necessary to satisfy the amount due the complainants under said lease.

The defendant Maddox demurred to the bill as a whole, *and to each paragraph thereof*, separately and severally, and to certain aspects of the bill hereinabove set forth. A number of grounds of demurrer are assigned.

■ This court has firmly committed itself to the rule that a demurrer addressed to the bill as a whole, *and to each paragraph thereof separately and severally*, is but a demurrer to the whole bill, and, if the bill contains equity in any of its aspects, the demurrer should be overruled. Wood v. Estes, 224 Ala. 140, 139 So. 331; Oden v. King, 216 Ala. 504, 113 So. 609, 54 A. L. R. 1413; Thompson v. Brown, 200 Ala. 382, 384, 76 So. 298; Hudson v. Hudson, 204 Ala. 75, 85 So. 282. And while the demurrant professes to direct his demurrer also to *certain aspects of the bill hereinabove set forth*, we are not advised by anything stated what those certain aspects were. However, the necessities of the case do not require us to dispose of the demurrer upon the theory that the "certain aspects" demurred to are not particularly designated.

It is earnestly insisted in brief of appellant that the lease contract, by its terms, ceased at the expiration of the first year, that is, on December 1, 1931, in as much as there was no renewal thereof. That the appellant was only given the privilege of renewing the lease for an additional period of five years; that when the appellant held over after the 1st of December, 1931 (to quote his language) "not having signed any more notes for the rental instrument, or executing any other or similar lease, he was a tenant at will or sufferance, and the relation of landlord and tenant existed, and the landlord would have his lien, but of course his lien would attach only to such livestock, cattle, of the defendant which grazed on the rented premises, and only on such personal property as enjoyed the protection of the rented premises."

The appellant might be right in his deductions and conclusions, if it could be held that the lease contract terminated on December 1, 1931, but, with the *renewal agreement* contained in the lease, coupled with the fact that the appellant held over after December 1, 1931, and has continued to hold the leased premises to the time of the filing of the present bill, can it be said that the appellant and appellees have not treated the contract as renewed for an additional term of five years from December 1, 1931?

This court, in the case of Tenn. C., I. & R. Co. v. Pratt Consolidated Coal Co., 156 Ala. 446, 47 So. 337, has in effect passed upon the question here presented, and adversely to the contention of appellant, that the lease terminated on December 1, 1931. The effect of the holding in that case was that an agreement to continue the lease after the expiration of the term provided for therein constituted a "present demise, which becomes operative immediately upon the expiration of the option." The learned justice, speaking for this court, observed: "It has been held that a lease for 10 years, with a provision that it should be renewed for 10 years longer, is a lease for 20 years. Hall v. Spaulding, 42 N. H. 259; Ranlet v. Cook, 44 N. H. 512, 84 Am. Dec. 96. The party holding over under the option holds under the original lease. Insurance Co. v. National Bank, 71 Mo. 58, 60, 61. As stated in one case, such a contract is 'an unconditional lease for the original term, and a conditional lease for the term thereafter,' and 'he holds for the additional term under the original lease.' Sheppard v. Rosenkrans, 109 Wis. 58, 85 N. W. 199, 83 Am. St. Rep. 886, 888."

In Maryland, where a lease for a longer period than fifteen years was prohibited by statute, the Court of Appeals of that state held that a lease for fourteen years, with a covenant to renew for another fourteen years, is in effect a lease for a longer period than fifteen years, and therefore that the lease came under the provisions of an act which made all rents reserved for a longer term than fifteen years redeemable. Stewart v. Gorter, 70 Md. 242, 16 A. 644, 2 L. R. A. 711. To the same effect are the holdings of the English courts. Watson v. Master, etc., of Hospital, 14 Ves. Jur. 324; Moore v. Clench, 1 C. D. 447; Lydiatt v. Froach, 2 Vern. 410.

In our recent case of Feidelson v. Piggly-Wiggly Alabama Co., Inc., 221 Ala. 81, 127 So. 516, 517, after referring to the cases holding that a provision for a renewal of the lease required the execution of a formal renewal contract, we then observed: "The other view is that 'a covenant or agreement to extend the term of a lease for a time specified is not a covenant to renew, but a present demise which becomes operative immediately upon the exercise of the option conferred, and takes effect at the expiration thereof, and is

subject to all the conditions and covenants of the original lease. No new lease or other writing is necessary to extend the term, although there is some authority to the contrary.' 35 C. J. 1026. This court in Tennessee Coal, Iron & R. Co. v. Pratt Consolidated, 156 Ala. 448, 47 So. 337, held to the last-stated view, citing cases in which it had been decided that a lease for ten years, with a provision that it should be renewed for ten years longer, is a lease for twenty years."

As was pointed out in the Feidelson Case, supra, quite a number of cases may be found in which is noted a difference in legal effect between a covenant to extend and one to renew. This line of cases would seem to hold that a provision in a lease for its continuance does not, as does a covenant to renew, involve an agreement to make a new lease. Mecklenburg Real Estate Co. v. Kyoleum Co., 142 Tenn. 295, 218 S. W. 821, 14 A. L. R. 944.

In 35 Corpus Juris, p. 1025, the two views are stated by the author, and we quote therefrom: "A covenant to renew is according to one view strictly construed as a covenant to grant an estate, and not a present demise, as distinguished from a covenant to extend, so as of itself and alone to continue the tenancy for the renewal period, hence, it calls for a new lease, or a formal extension of the existing lease, or something equivalent thereto, without which the tenant cannot strictly retain possession as against the lessor in a court of law, by relying merely upon the covenant to renew. This rule, however, is held to yield to the contrary intention of the parties evidenced by their agreement, or by their practical construction of their contract. By other authorities, the view is taken that a lease containing a renewal clause operates as a present demise, to take effect in the future, provided the lessee elects to take a renewal, and that the execution of a renewal lease is not necessary to bind either party where the lessee has made his election to renew in accordance with the terms of the lease and the law of the particular jurisdiction in which the property is situated, unless the original lease so provides."

■ Our court seems to be in line with those courts holding that, under a covenant to renew at the option of the lessee, a renewal lease, executed by the parties, is not necessary. Feidelson v. Piggly-Wiggly Ala. Co., Inc., supra.

■■ The appellant, under the contract of lease, had the option to renew the lease for a period of five years, to commence at the expiration of the original lease. There is no averment in the bill that the appellant ever, in express terms, signified his election to renew the lease, but he held over, and continues to hold the premises. This must be deemed and treated as an election by him to renew the lease. And the renewal being implied from the conduct of the parties, all the relations, rights, and remedies of the parties thereunder are the same as if it had been an express renewal. Robinson & Ledyard v. Holt, 90 Ala. 115, 7 So. 441; Parker v. Hollis, 50 Ala. 411; 35 C. J. 1027; Taylor's Landlord & Tenant § 22.

■ The contention of appellant that the complainants were without right to declare all installments of rent due and payable, in view of the stipulation in the lease contract authorizing the lessor to declare all installments of rent due, upon the failure of the lessee to pay, when due, any installment, is without merit. Such a provision is regarded as reasonable, and within the contractual rights of the parties, and may be enforced. 36 C. J. p. 363, § 1201, and p. 480, § 1411; H. M. Price Hdw. Co. v. Meyer, 224 Ala. 35, 138 So. 543.

■■ The further contention of appellant is that the lien given the landlord on the property of the tenant secured only the payment of rent accruing under the original lease, and was not a pledge securing rent accruing thereafter, under defendant's holding over. We think this contention is likewise without merit. It is well recognized that a landlord may require of the tenant a deposit, or some other pledge, to secure the payment of rent, as and when, by the terms of the lease, such rent shall fall due.

In recognition of the right of the landlord to require a deposit, or pledge to secure the payment of his rent, the right of the landlord to retain the security is thus stated in 36 C. J. p. 299, § 1077: "In accordance with the general rules applicable to pledges, the landlord is entitled to retain a deposit made by the tenant as security for the payment of rent or performance of other obligations, until the complete payment or discharge of the obligations which the deposit was intended to secure. Accordingly, the right of retention ordinarily exists as long as the relation of landlord and tenant continues and until the termination of such relation and consequent cessation of the liabilities which the deposit was intended to secure, at which time the landlord is bound to return the deposit or security, or account for it."

■ And, in this connection, the rule seems to be recognized that a renewal of the lease is a renewal of the security: "The agreement regarding the deposit, and the landlord's right of retention, may be extended by a renewal of the lease, *or by a holding over on the part of the tenant*, unless the parties clearly intended to limit the security to the obligations arising under the first or original lease." (Italics supplied.) 36 C. J. p. 300, § 1077.

The case of Adams v. Dunn, 64 Pa. Super. Ct. 303, was one where the tenant, who had given a deposit of $200 as a fund to indemnify the landlord against loss by reason of any

failure of the lessees to comply with the various covenants of the lease, held over for a day after the termination of the lease, and the court held that the lessee was liable for another yearly term. And in that case, with reference to the landlord's right to retain the deposit, the court observed: "It appears the lessor still holds the deposit of two hundred dollars of the money of the lessee's placed in her hands, under the terms of the written lease, as a fund to indemnify her against loss by reason of the failure of the lessees to comply with the various covenants of the lease. She is entitled to hold this money as long as the relation of landlord and tenant continues to exist. When that relation is dissolved, but not until then, can she be called upon to return the same to the lessees or otherwise account for it." We do not commit ourselves to the conclusion reached in the above case that a holding over for the space of one day was such a renewal of the lease as carried with it the right to hold the deposit. The necessities of the case do not require us to go to that length.

We are constrained to hold that, so long as the relation of landlord and tenant exists between the parties in this case, the complainants are entitled to look to the contract lien upon the property of the tenant for payment of the agreed rental.

While the bill is silent as to whether the property described in the bill was owned by the defendant at the time the lease, with its provisions as to lien upon the property of the lessee to secure the rent, was executed, or whether it was afterwards acquired, we are not concerned with this feature of the case, as no ground of demurrer is directed to any such omission of averment. We here only deal with those grounds of demurrer which are assigned. Whether the failure to aver that the property described in the bill was owned by the defendant, Maddox, at the time the lease was executed, was a defect in the bill, subjecting it to an apt ground of demurrer, we do not decide, as the question is not presented.

■ Another insistence of the appellant is that the bill fails to aver that the cattle, upon which the complainants seek to establish and enforce a lien, were ever grazed upon the rented premises. Evidently, the defendant has misconceived the purpose of the complainants' bill. It is not one to enforce a statutory lien, but a contract lien.

■ In concluding this opinion we may observe that the lease contract contains the provision that, "if the party of the second part (lessee) shall fail in business, or shall fail to pay any one of the above described notes or installments of rent, at maturity, then all remaining installments shall at once become due and payable, and the party of the first

part may treat them as due and payable; without further notice to the party of the second part." The lessor has sought by this bill to enforce this provision of the contract. It is but proper to here say that, if the complainants collect, under this acceleration clause, the full amount due them for the entire term of the lease contract, the respondent, in that event, would be entitled to hold and enjoy the premises during the period of the lease. The complainants would not be entitled to the rent in full and at the same time be allowed to dispossess the defendant and re-enter the premises.

In the event the lessor should exercise his right to terminate the lease, as the contract, in certain contingencies gives him the right to do, he should not be allowed to collect rent beyond the time the lessee is allowed to remain in possession.

We are at the conclusion the court properly overruled the defendant's demurrers to the bill, and to its different aspects, as for any grounds assigned thereto, and the interlocutory decree of the court is due to be, and is here, affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.