202 So.2d 734

**Wade REYNOLDS**

v.

**L. M. BRYANT et al.**

**5 Div. 838.**

Supreme Court of Alabama.

Sept. 14, 1967.

Ball & Ball, Montgomery, for appellees.

Russell, Raymon & Russell, Tuskegee, for appellant.

HARWOOD, Justice.

Wade Reynolds filed a bill seeking the establishment of an alleged written lease of a certain tract of land belonging to L. M. Bryant. The lease purportedly was for the years 1965, 1966, and 1967.

Burt Dillard, to whom Bryant had leased the land in 1966, was made a respondent along with Bryant.

The bill alleges that Reynolds went into possession of the land under the lease in 1965, and remained in possession during January 1966, and a part of February 1966, when Bryant notified Reynolds that the lease was cancelled.

An amendment to the bill was filed in which it was set forth that if the complainant was mistaken in averring that there was a valid written lease for the years 1965, 1966, and 1967, nevertheless the complainant was in possession of the land during 1965 and paid rent to the respondent Bryant for that year and there was an implied renewal for the year 1966, in that complainant had made arrangements to farm the land, and had been in possession of the same until about 21 February 1966, and had not been notified by Bryant of any intention to cancel the lease until that date.

The respondent Bryant filed an answer in which he denied the execution of any written lease; that an oral lease was made between himself (Bryant) and complainant for the rent note covering 1965; that the alleged lease being oral and for more than one year, was void under the Statute of Frauds.

In his answer the respondent Dillard averred that he had no knowledge of any lease between Bryant and Reynolds at the time he leased the land from Bryant in 1966.

After an ore tenus hearing the court entered a decree that the complainant was not entitled to relief; that there was no valid or enforceable lease between complainant and respondent Bryant; and that the alleged lease between Bryant and complainant for the years 1966 and 1967 was void under the Statute of Frauds (Section 3(1) and (5), Title 20 Code of Alabama 1940).

The bill as amended was dismissed.

In the hearing below, the complainant testified that he had rented the land in question from Bryant for the year 1963 at a rental of $20.00 per acre for the cotton allotment, and had again rented the land in 1964, on the same terms.

For 1965, Bryant wanted a written lease and it was agreed that Reynolds and Bryant would enter into a three year lease of the land, that is, for the years 1965, 1966, and 1967, on the same terms.

Thereafter Bryant presented to Reynolds a written lease of the land for the above years. Reynolds did not remember the date the lease was presented to him, but stated it was in the Fall of 1964—it was not in November but could have been December or January.

In this connection Reynolds testified he thought the lease was typewritten and consisted of two or three pages. It had already been signed by Bryant. He did not know the terms of the lease, as he had not read it over before placing his signature thereto. Bryant took the lease and said he would have it recorded.

The complainant introduced in evidence a rent note he had executed on 1 October 1965. This note provided for payment of rent on the Bryant land on 1 October 1965, 1966, and 1967, for each of the specified years, based on cotton allotments on the land.

Reynolds testified on cross examination that he could not be positive but that this rent note may have been the lease that he testified he had signed.

It also appears that Reynolds had left two tractors and a truck on the Bryant land upon the completion of his farming operations in the Fall of 1965, and they were still there in the early part of 1966. They had not been used or cranked up, however, since they had been left there in the Fall.

Reynolds testified that in January 1966, Bryant had asked him if he wanted the land again and he had indicated he did. Earl Evans was present at this time. On 15 February 1966, he moved some fertilizer onto the Bryant place.

Evans, who was presented as a witness by the complainant, testified that in reference to the conversation between Bryant and Reynolds as to the renewal of the lease for 1966, Bryant had asked Reynolds if he

wanted the place again, and if he did, Reynolds would have to work it better and different arrangements would have to be made. This seems to have ended the negotiations for a lease for 1966.

As to the moving of the commercial fertilizer to the Bryant place, Evans testified that Reynolds had instructed him to move it from the Matheny place to a barn on the Bryant place. Reynolds had never used this barn. Evans then contacted Bryant and was told it would be all right to place the fertilizer in the barn "for a short while" and told him where to place it in the barn.

Bryant, in his testimony, denied that he had at any time prepared or presented to Reynolds any written lease.

Bryant further testified in effect that he had entered into an oral agreement with Reynolds for the rental of the land on an annual basis. He had been dissatisfied with the way Reynolds had cultivated the land in 1965, in that the cotton had not been properly chopped and cockleburs and weeds had taken over and the cotton production was below par for the land.

In the latter part of 1964, Reynolds had wanted to lease the land for 1965, 1966, and 1967, but he had told him that with the cotton allotments being changed as they were each year, he did not want to tie up the land for that period of time on a cotton allotment basis for the rent. He had made unsuccessful efforts to contact Reynolds in connection with renting the place for 1966, but did not see him until sometime in February when he told him he could not have the land any longer.

As to the rent note, Bryant testified that Reynolds had wanted to buy a cotton picker and "he wanted to be sure he had property, and I told him 'Wade, I'll try to help you all I can and if it will help you any we will have this rent note fixed up, but it' (meaning the lease) 'will be for a year at a time

over a period of three years' and he agreed with me."

By Section 3, Title 20, Code of Alabama 1940 (Statute of Frauds), certain agreements must be in writing, or else they are void. Subsection (5) of said Section 3 provides:

"Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof be paid, and the purchaser be put in possession of the land by the seller."

■ Both possession and payment are necessary to remove an oral agreement from the dictates of the Statute of Frauds. Hurst v. Thomas, 265 Ala. 398, 91 So.2d 692, and cases cited therein.

It appears from a study of the evidence presented below that the complainant has failed to establish to the required degree of either possession or payment.

■ Where tenant for years holds over after the expiration of his term, the law will imply an agreement to continue the lease for another year, upon the terms of the prior lease. It is the duty of a lessee, upon the expiration of his term, to peaceably surrender the leased premises. If he neglects or refuses to do so the landlord may at his option treat him either as a trespasser or as a tenant. This election lies with the landlord and not with the tenant. Wolfe v. Wolff and Bros., 69 Ala. 549; A. G. Rhodes Furniture Co. v. Weeden & Dent, 108 Ala. 252, 19 So. 318; Solomon v. Rogers, 210 Ala. 423, 98 So. 370.

■ A possession taken as lessee, and continued without visible change, does not tend to prove that such occupant was put in possession by the owner, and is not an act

tending to give notice of a change of holding. McCarthy v. Nicrosi, 72 Ala. 332.

■ The casual acts of Reynolds in leaving the tractors on the Bryant land after harvesting the cotton in the Fall, and having fertilizer moved into one of Bryant's barns for temporary storage cannot be deemed acts of possession sufficient to meet the requirements of the Statute of Frauds. See Formby v. Williams, 203 Ala. 14, 81 So. 682, for a full discussion of acts of possession sufficient to comply with the Statute of Frauds.

Even had Reynolds been put in possession of the land (which he was not) there was no payment of the purchase price, (rent), or a portion thereof.

■ True, the rent note was executed by Reynolds, payable on the first day of October in the years 1965, 1966, and 1967. While he did pay the rent in 1965, none had been paid in 1966, when Bryant cancelled the lease in February of that year.

As stated in 49 Am. Jur., Statute of Frauds, Section 268, at p. 585:

"Ordinarily, it seems that the giving by the buyer of his negotiable note for the price or a part of the price does not constitute a sufficient payment to satisfy the statute, on the theory that the giving of a note is only a promise to pay at some future time, and is therefore not the actual payment which is required by the statute, unless from intention of the parties made manifest in the transaction it is given and accepted as payment."

To like effect see Bates v. Terrell, 7 Ala. 129, wherein it is stated:

"A promissory note does not state the terms of the contract of purchase, nor is it a memorandum from which it may be inferred. It is nothing more than a prom-ise to pay money, for which the law implies a valuable consideration."

The decree of the lower court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and MERRILL, JJ., concur.