In their complaint, plaintiffs sought a judgment declaring that the lease between plaintiffs and defendants had effectively been extended by the acts of the parties. After a jury trial, the trial court entered a directed verdict for plaintiffs/lessees, declaring that the lease "was effectively extended for an additional ten-year term following the expiration of the primary term on December 14, 1983, and is in full force and effect." The lessors' primary arguments against this judgment are that they did not waive the lease's requirement of written notice of extension and that the lease's holdover clause made the lessees tenants from month to month after the expiration of the primary term.
On September 22, 1970, Wade Lott, Elisabeth Lott Unger, Agnes Lott Peck, William B. Lott, and Virginia McWherter Lott, as lessors, entered into a lease agreement with Citmoco Services, Inc., as lessee. The leased property is seven to eight acres at the junction of the Mobile River and Chickasaw (or Chickasabogue) Creek in the County and City of Mobile. The lease recited that the leased premises were to be used for sale, storage, and transportation of gasoline, petroleum, and petroleum products, or for any other lawful business, at lessee's option.
The lease included the following provision regarding its term and extensions thereof:
 "The primary term of this lease shall be for a period of One Hundred Fifty-Eight (158) months, effective October 15, 1970 and expiring December 14, 1983. It is agreed, however, that the lessee shall have the right to extend this lease for Three (3) additional terms of TEN (10) YEARS each, at the rental hereinafter set out by giving lessor written notice of its election to exercise this right of extension at least One Hundred Eighty-Three (183) days before the expiration of the primary term or the expiration of any renewal term. All options are contingent upon the payment of all rent which shall have become due during the primary term of any renewal term and likewise being [sic] contingent upon the compliance with all terms of this lease agreement."
The lease called for any written notice to the lessors to be sent by registered mail.
The holdover clause upon which the lessors base part of their argument reads as follows:
 "It is understood and agreed that should the lessee hold over the premises herein described beyond the determination by limitation of the term herein created, or any extension thereof, without first having extended this lease by written agreement, such holding over shall not be considered as a renewal or extension of this lease for a longer period than one (1) month, and during this period the yearly rent shall be apportioned on a monthly basis; and provided further no such holdover shall exceed 90 days."
The lease further provided that the lessee could assign its interest and could erect improvements, which would remain its property if it paid its rent and fulfilled all its obligations under the lease.
Shortly after the execution of the lease, Citmoco assigned its interest in this lease as to the portion of the property south of the old Bay Bridge Causeway and its interest in another lease of property immediately to the south (the Meaher property) to the State Docks Department. The State Docks Department built 125,000-barrel storage tanks on the Meaher property and then sublet the properties to Citmoco. There is one such tank partially on the southern portion of the property conveyed by the Lott lease and partially on the Meaher property; it appears that Citmoco built this tank at its expense and also built further north on the Lott property one other tank, which has since been disassembled.
Citmoco carried out its business of gasoline and petroleum storage, transportation, and sale on this property until May of 1982, when it transferred its interest in the Lott lease and the State Docks sublease to Douglas Oil Purchasing Company, Inc. Bart B. Chamberlain, Jr., is the president *Page 1197 
and controlling stockholder of both Citmoco and Douglas Oil.
In September 1982, Peggy Bakewell, an employee of Douglas Oil, brought to Chamberlain's attention the upcoming need to extend the Lott lease. Chamberlain drafted a proposed letter to the Lotts giving notice of extension and instructed Bakewell to send the letter to the corporation's attorney[1] for approval and editing. Whether this draft reached the attorney is unclear, but Bakewell received no response.
No written notice to extend the Lott lease was given in June 1983 when it was due. However, after the expiration of the primary term in December 1983, the parties continued their dealings without apparent change. In May 1984, Vern Richard Schuerman, an officer of the First National Bank of Mobile, who was handling the Lott lease under an agreement with the Lotts whereby the bank would collect and distribute rents to the Lotts, was calculating a rental adjustment for the Lott lease. Schuerman testified that he "happened to notice that there was an option that should have been exercised," and that he could not find a written notice in the file, so he included with the notification of the adjustment in rent the statement, "I would appreciate knowing if Citmoco exercised the option in writing." In reply to this letter, Bakewell on June 13, 1984, sent Schuerman a copy of the proposed letter drafted by Chamberlain, together with a cover letter reading in part:
 "I have gone through our files and enclose copy of letter dated September 9, 1982, from Mr. Chamberlain to the Lessors wherein the option was exercised. I do not find in my file a letter acknowledging receipt of such notice."
Schuerman filed this letter and the attached copy but did not mention them to the Lotts until Wade Lott telephoned him on November 11, 1984, to ask whether the lease had been renewed. On November 13 Schuerman forwarded the letters to Wade Lott.
During this period, the State Highway Department was considering replacing the old Bay Bridge, the approach to which ran across the Lott property just north of the Citmoco/Douglas storage tank. The new bridge would also be located on the property leased by the Lotts to Citmoco, and the question arose as to the proper party to receive a condemnation award. In September 1984 Wade Lott met with Chamberlain and discussed the possible condemnation. Lott suggested that Chamberlain buy the property, but Chamberlain declined, giving, according to Lott, every impression that he thought the lease was in force. Lott testified that Chamberlain said he expected to receive most of the condemnation award because he had the property tied up for 28 years. Chamberlain testified that at that time he was under the impression that the lease had been renewed.
In October 1984 the Highway Department offered the Lotts $ 1,047,000 for a right-of-way across the property, if it could be conveyed free of encumbrances. On October 28 Wade Lott wrote a letter to the Highway Department in which he acknowledged the offer, but said:
 "Speaking for the Lott family I must refuse this offer because, as you know, the land is under lease to Citmoco (now Douglas Oil Co.), and I know of no way we can cancel this lease."
The letter concluded with a counter-offer in which, among other things, Lott proposed to convey the land to the State subject to the lease with a hold harmless covenant from the State regarding any legal action arising from the lease.
Citmoco/Douglas's attorney elicited from Wade Lott testimony that the State had, earlier in October of 1984, made an offer of $1,423,000, of which $839,700 was allocated to the improvements, i.e., Douglas Oil's storage tank and facilities. Lott also testified, however, that the tank was not included in the $1,047,000 offer.
After receiving the Bakewell letter and the purported extension notice which Schuerman forwarded to him on November *Page 1198 
13, Lott telephoned Schuerman and asked him to obtain a copy of the registered mail receipt from Citmoco or Douglas Oil. Schuerman wrote a letter to Citmoco on November 29. On December 9, Chamberlain telephoned Lott and said that the notice to extend the lease had not been sent and asked Lott to give a letter saying the lease had been extended. Chamberlain took the position that the lease had effectively been extended by the Lotts' continued acceptance of rent and their failure to give notice to quit for a year after the primary term had expired, but said a letter would clarify the matter without a lawsuit. Lott refused, and Citmoco and Douglas Oil brought this suit on December 18, 1984. The State Docks Department later joined as a plaintiff/intervenor.
The Lotts argue that the trial court erred in directing a verdict in favor of the plaintiffs because (a) waiver is a question of fact for the jury and there was evidence giving rise to an inference that the Lotts had not waived their right to written notice of an exercise of the option to extend the lease, and (b) continued occupancy of the premises could not serve to extend the lease because the holdover clause provided that holding over would not extend the lease. The Lotts also take issue with the trial court's ruling excluding certain evidence, as will be set forth following discussion of the main issues.
The starting point for discussing the issue of waiver isMcIntyre v. Coker, 274 Ala. 457, 150 So.2d 220 (1963). In that case, Coker was the lessee of property under two leases with primary terms expiring on December 31, 1956. Both leases contained provisions allowing for renewal if written notice were given at least 30 days prior to the expiration of the primary term and again at the end of the first renewal term. Coker did not give written notice, but the lessor continued accepting rent after the end of the primary term without mentioning the failure of notice to renew. On December 8, 1960, the lessor sold the property to McIntyre, who demanded possession of the property from Coker. Coker filed a declaratory judgment action, and the trial court held that both leases had been legally extended to December 31, 1961, and that Coker had the right to a second five-year extension provided for in the lease.
This Court affirmed the judgment of the trial court inMcIntyre, holding:
 "In so far as we are advised, this court has not been called upon heretofore to pass on the question as to whether a holding over and payment of rent is sufficient to constitute a renewal of the lease for the additional term, at the same rental, when the lease provides for the lessee to give to the lessor written notice of the lessee's intention to renew.
 "The courts of other states are not in agreement, but we believe the better view to be that where there is no distinction between a 'renewal' provision and one for the extension of the lease, as is the rule in this state, a lessee who enters into possession of the demised premises under a lease for a fixed term, with the privilege of renewing it by giving written notice to the lessor, and continues in possession after the fixed term has expired, paying the rent therefor as it becomes due, thereby elects to exercise the option for a renewal, although no written notice was given. In such a lease the requirement of a written notice may be waived by the parties, and a waiver may be implied when the lessee remains in possession and pays the rent to the lessor. Probst v. Rochester Steam Laundry Co., 171 N.Y. 584, 64 N.E. 504; Feldman v. Sheridan Warehouse Co-operative Corp., 247 App. Div. 82, 285 N.Y.S. 1033; Blanchon v. Kellerstrass Distilling Corp., 200 Mo.App. 610, 208 S.W. 484; Holton v. Andrews, 151 N.C. 340, 66 S.E. 212."
Id., 274 Ala. at 461, 150 So.2d at 224.
This Court also found that a holdover constituted an election to renew a lease in Maddox v. Hobbie, 228 Ala. 80,152 So. 222 (1934):
 "The appellant, under the contract of lease, had the option to renew the lease *Page 1199 
for a period of five years, to commence at the expiration of the original lease. There is no averment in the bill that the appellant ever, in express terms, signified his election to renew the lease, but he held over, and continues to hold the premises. This must be deemed and treated as an election by him to renew the lease. And the renewal being implied from the conduct of the parties, all the relations, rights, and remedies of the parties thereunder are the same as if it had been an express renewal."
Id., 228 Ala. at 83, 152 So. at 224-25. See alsoReynolds v. Bryant, 281 Ala. 372, 202 So.2d 734
(1967).
These cases are in accordance with the general rule:
 "It is well settled that the lessor may waive the requirement in a lease of notice by the lessee of renewal at or within a certain time, even though it is a condition precedent that timely notice be given. . . . A waiver will be implied where the lessee remains in possession and pays the rent to the lessor with the acquiescence of the latter. Also, a provision that notice be given to the lessor in a certain mode, as in writing or by mail or registered mail, or within a certain time before the termination of the lease, may be waived. Such waiver has been held to result where expense and labor had been incurred by the lessee, and plans had been laid out for the future, which the lessor could hardly fail to know would not have been incurred and entered upon if the lessee had not been relying on a renewal of the lease. Whether there has been a waiver of written notice is a question of fact to be determined by the circumstances indicating the intention of the parties."
50 Am.Jur.2d Landlord and Tenant § 1186 (1970) (citations omitted).
 "If the tenant has an option to renew for a specified term, the holdover, with payment and unconditional acceptance of rent, will create a tenancy for the specified term, such acceptance of rent constituting a waiver of any right of the landlord to notice of the intention of the tenant to renew."
Id., § 1191 (citations omitted).
The Lotts argue first that waiver is a question of fact that the trial court should not have taken from the jury by directing a verdict for the plaintiffs.
Even conceding that waiver is a fact question, we do not find that the judgment in this case is due to be reversed on this ground. Wade Lott, "[s]peaking for the Lott family," represented to the State Highway Department that the Citmoco lease was in force and that he knew "of no way we can cancel the lease." This was on October 28, 1984, sixteen months after the written notice of renewal had been due and ten months after the end of the primary term. Notice of the terms of a lease is charged to the parties thereto, Alabama Butane Gas Co. v.Tarrant Land Co., 244 Ala. 638, 15 So.2d 105 (1943), and so the Lotts are charged with notice of the termination date of the lease and the requirements for extensions.
Wade Lott testified that in his September meeting with Chamberlain he had considered the lease to be in effect, and Chamberlain had given every indication that he considered the lease to be in effect. The Lotts had full access to the lease terms which showed that written notice had been due by registered mail, but they made no inquiries to determine whether such written notice had been given until they had a motivation to cancel the lease they had theretofore treated as renewed.
Schuerman's inquiry does not benefit the Lotts in this regard because it was beyond the scope of his authority. Under the agreement between the Lotts and the bank, the bank was the Lotts' agent only for the purpose of collecting and disbursing rents, and had "no responsibility for taxes, insurance, repairs and upkeep or seeking other tenants." Moreover, the evidence was undisputed that Schuerman did not until November 1984 communicate to the Lotts the May 1984 representation that written notice had been timely sent. Finally, even if Schuerman's inquiry were attributable to *Page 1200 
the Lotts, it would not suffice to prevent a waiver, because, with no record of having received the notice, the Lotts should have requested the registered mail receipt rather than simply allowing possession to continue, if they had in fact taken the position that the lease had expired for failure of written notice.
Given the undisputed facts of the Lotts' September and October 1984 acknowledgements that the lease was in force, and their acceptance of rents while allowing Douglas Oil to remain in possession for virtually a full year after the expiration of the primary term with no indication that they considered the lease to have expired, we find no error in the trial court's judgment on the ground that waiver is ordinarily a fact question.
The Lotts next argue that this case is distinguishable fromMcIntyre because the holdover clause in the Lotts' lease provided that if the lessee held over after the primary term without giving timely written notice of an exercise of the option to extend the lease, the lease would not be treated as extended for more than a month at a time. This argument does not present reversible error, because of the language at the end of the holdover clause: "provided further no such holdover shall exceed ninety days." This language makes it clear that this clause was intended to prevent a casual holdover from extending the lease, not to allow the lessors to accept rent indefinitely with the opportunity to disavow the lease at their option.
Such an interpretation is consistent with the expressed purpose of the lease: to allow Citmoco, and later Douglas Oil, to operate a business which required large capital expenditures for storage and transportation facilities. If the Lotts' acquiescence did not constitute a waiver because of the holdover clause under these facts, would the holdover clause have prevented an extension if Douglas Oil had constructed additional facilities after the 90-day period but prior to the demand of proof of written notice on November 29, 1984? This rhetorical question demonstrates that the 90-day limitation on the holdover clause serves a purpose consistent with the parties' agreement expressed in the lease.
The Lotts argue that the 90-day language made Douglas Oil a tenant at sufferance when it held over beyond 90 days. This argument accords no meaning to the 90-day language of the holdover clause. After the end of the primary term, Douglas Oil was entitled to a month's possession if the Lotts accepted a month's rent. Under the Lotts' interpretation, there would be no change in this situation at the end of 90 days, so the 90-day language would be completely superfluous. Therefore, the interpretation that the 90-day language limited the time in which a holdover could create only a month-to-month tenancy is the more reasonable one, and the trial court did not err in applying the holdover clause in this manner.
Finally, the Lotts argue that the trial court erred in excluding two letters between Bakewell and Citmoco's corporate counsel. The Lotts argue that the letters show that Citmoco established a scheme to prevent the Lotts from discovering that no written notice had been given and to establish a waiver by continuing in possession and paying rent. The trial court stated that it was sustaining the objection to the letters, not on the basis of the attorney-client privilege, but because they were immaterial to the issues.
Without deciding whether the attorney-client privilege would be applicable, we hold that the trial court did not err in excluding the letters on the basis of immateriality. Citmoco and Douglas Oil were not under a duty to inform the Lotts that no notice had been sent, and it was perfectly permissible for them to attempt to establish an extended term by the conduct of the parties. The evidence showed that Douglas Oil had intended to send the written notice, and when it discovered that the attempt to send the notice had inadvertently not been carried through, it was entitled, under the holding of McIntyre v.Coker (and other authorities establishing that a lessor may treat a tenant holding over either *Page 1201 
as a trespasser or as having renewed his lease), to remain in possession, pay rent, and wait to see if the Lotts accepted it as a continuing tenant and thereby waived the requirement of written notice. Thus, the letters excluded from evidence did not tend to prove that the Lotts did not waive the requirement of a written notice of extension, and the trial court did not err in sustaining the objection to the letters. "Questions of materiality, relevancy, and remoteness rest largely with the trial judge, and his rulings must not be disturbed unless his discretion has been grossly abused." Ryan v. Acuff,435 So.2d 1244, 1250 (Ala. 1983), citing Dorcal, Inc. v.Xerox Corp., 398 So.2d 665 (Ala. 1981); Costarides v.Miller, 374 So.2d 1335 (Ala. 1979).
Because the material facts in this case are undisputed and the trial court correctly applied the law to the facts, the judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
MADDOX, JONES, BEATTY and HOUSTON, JJ., concur.
[1] Citmoco and Douglas are represented by different counsel on appeal.