On July 21, 2004, Kirkland Enterprises, Inc. ("the landlord"), sued Darryl C. Hardin and Ann Price Hardin d/b/a Antiques and Collectibles of Northport ("the tenants"), alleging the breach of a lease. Following a bench trial, the circuit court entered a judgment in favor of the landlord in the amount of $46,841.00, representing the amount of rent due under the remaining term of the lease, late fees, eviction costs, repair costs, and attorney fees and costs of the action. The tenants appeal, conceding that they owe the landlord $23,896.44, but contending that the balance of the judgment in excess of that amount is erroneous because the lease agreement did not allow the landlord to collect unaccrued (or "accelerated") rent after the eviction.
On August 15, 2001, the tenants signed a three-year commercial lease. They paid rent until November 2003, after which they made no more payments through the *Page 42 
end of the lease term, August 14, 2004. On December 11, 2003, the landlord served the tenants with a notice of termination of the lease. On December 30, 2003, the landlord served the tenants with a "Notice of Eviction Action," which was brought pursuant to § 35-9-80, Ala. Code 1975, in the Tuscaloosa District Court. Following the entry of a judgment in favor of the landlord in the district court and the tenants' unsuccessful appeal to the circuit court, the tenants vacated the leased premises on March 8, 2004.
After the tenants vacated the premises, the landlord remodeled the building. On July 1, 2004, the landlord moved its subsidiary, Weathers Auto Supply Company, Inc., into the premises when the subsidiary was forced to relocate because of an urban-renewal project. When asked whether the subsidiary paid rent to the landlord, Buddy Kirkland, the landlord's president, testified as follows:
 "[W]e factored that into our financial statements, yeah. That is our building and, of course, we sort of set our businesses up like in departments, you know, and we had allocated so much rent to each division."
There was no evidence regarding the amount of rent that the landlord allocated to the subsidiary.
The tenants argue that they owe no rent past March 8, the date they vacated the premises and the landlord recovered possession.
 "After the dispossession of a tenant in summary proceedings for nonpayment of rent, the lease is at an end, and the tenant's liability thereafter is for damages, not further rent payments."
49 Am.Jur.2d Landlord and Tenant § 1012 (1995) (footnote omitted). See O'Byrne v. Henley,161 Ala. 620, 622-23, 50 So. 83, 83 (1909) (stating that "[a]n eviction of the tenant by the landlord . . . will authorize the tenant to abandon the premises, and will exonerate him from further liability for rent"). It is, however, "within the right of the contracting parties to agree that the time for the payment of the rent might be accelerated, in certain contingencies,"H.M. Price Hardware Co. v. Meyer, 224 Ala. 35, 38,138 So. 543, 546 (1931); see also Maddox v. Hobble,228 Ala. 80, 83, 152 So. 222, 223 (1934), and "there must be an express provision in a lease in order for it to provide for acceleration upon default." Camelot Music, Inc. v. MarxRealty Improvement Co., 514 So.2d 987, 990
(Ala. 1987). Accord International Biochemical Indus., Inc.v. Jamestown Mgmt. Corp., 262 Ga.App. 770, 772, 586 S.E.2d 442, 445 (2003):
 "Although the general rule is that when a landlord evicts a tenant and takes possession of the premises, the lease is terminated and the right to claim rent which accrues after eviction is extinguished, the parties to a lease may contract to hold the lessee liable for post-eviction rent."
See generally Annotation, Liability for RentAccruing after Landlord's Institution of Action or ProceedingsAgainst Tenant to Recover Possession, 93 A.L.R. 1474, 1477 (1934) (stating that "it is generally recognized that an actual eviction of a tenant for any cause will, in the absence of a contractual provision to the contrary, relieve him from any liability for subsequently accruing rent, the lease having been terminated by such eviction").
The parties disagree about whether the lease contains a contractual provision allowing for the collection of rent after eviction. Section 12 of the lease provides that, in the event the rent is not paid when due, the landlord "shall have the option to do any of the following in addition to and *Page 43 
not in limitation of any other remedy permitted by law or by this lease":
 "I. Terminate the lease in which event Lessees shall immediately surrender the premises to Lessor. If Lessees fail to do so, Lessor may, without further notice and without prejudice to any other remedy Lessor may have for possession or arrearages in rent or damages for breach of contract, enter upon the premises and expel or remove Lessees and Lessees' effects, by force if necessary, without being liable to prosecution for any claim for damages therefor; and Lessees agree to indemnify Lessor for all loss and damage that Lessor may suffer by reason of such lease termination, whether through inability to relet the premises or through decrease in rent, or otherwise; in the event of such termination, Lessor may, at Lessor's option, declare the entire amount of rent which would become due and payable during the remainder of the term of this lease or any renewal or extension thereof to be due and payable immediately, in which event, Lessees agree to pay the same at once, together with all rents, theretofore due, together with interest thereon, if any, at a rate of 12% per annum, plus any costs of collection and a reasonable attorney's fee.
 "II. Enter the premises as the agent of the Lessees, by force if necessary, without being liable to prosecution for any claim for damages therefore, and relet the premises as the agent of the Lessees, and receive the rent therefor, and the Lessees shall pay Lessor any deficiency that may arise by reason of such reletting, on demand at anytime from time to time."
(Emphasis added.)
Section 12.1. of the lease is composed of two sentences. The first sentence is short; it gives the landlord the right to terminate the lease, and it states that, if the landlord exercises that option, the tenants "shall immediately surrender the premises" to the landlord. The second sentence is longer and consists of three provisions separated by semicolons. The second sentence deals with the rights and obligations of the parties in the event the tenants fail to surrender the premises upon the land-lord's termination of the lease. In that event, the landlord may enter and expel the tenants and remove the tenants' effects (forcibly, if necessary) and the land-lord will not be liable for damages. The acceleration-of-rent provision is located in the second sentence, after the second semicolon, and is introduced by the phrase "in the event of such termination."
The tenants argue that the phrase "in the event of such termination" refers to the kind of termination described in the first provision of the second sentence — that is, a termination brought about by the landlord's reentry of the premises and expulsion of the tenants. The landlord, on the other hand, argues that the phrase refers to the entirety of § 12.I., dealing with termination of the lease. Moreover, the landlord points out that the tenants did not
"immediately surrender the premises" as contemplated by the first sentence of § 12.I. The issue therefore is: Does the phrase "in the event of such termination" refer to what happened in the present case — the landlord's termination of the lease by eviction and the tenants' eventual surrender of the premises to the landlord? Or does the phrase "in the event of such termination" refer only to the specific scenario described in the second sentence of § 12.I. — the landlord's entry upon the premises and his expulsion of the tenants and removal of the tenants' effects?
The circuit court apparently determined that the phrase introducing the acceleration-of-rent provision referred toboth *Page 44 
types of terminations — those outlined in the first sentence and those outlined in the second sentence of § 12.I. The circuit court's judgment states, in pertinent part:
 "The Court finds that § 12 of the Lease Agreement specifically allows the [landlord] to reenter the premises and also declare the entire amount of rent, which would become due and payable during the remainder of the term of the Lease. Thus, [the tenants] contractually agreed that they could be held liable for this accelerated rent, even in the event of eviction."
"It is well settled that lease agreements are contracts and that the general principles of contract construction apply in ascertaining the scope and meaning of a lease agreement."Bowdoin Square, L.L.C. v. Winn-Dixie Montgomery,Inc., 873 So.2d 1091, 1098 (Ala. 2003). Whether a lease is ambiguous is a question of law for the trial court.Interstate Inv. Corp. v. Rose Care, Inc.,631 So.2d 836, 839 (Ala. 1993). An appellate court applies a de novo review to a trial court's determination of whether a contract is ambiguous and to a trial court's determination of the legal effect of an unambiguous contract term. See Winkleblack v.Murphy, 811 So.2d 521, 525-26 (Ala. 2001).
We acknowledge that there may be some grammatical ambiguity about what type of termination the phrase "such termination" refers to. Nevertheless, we hold that the phrase is not ambiguous in the legal sense. A provision in a written instrument is not ambiguous in the legal sense if the terms are "susceptible of only one reasonable meaning."Homes of Legend, Inc. v. McCollough, 776 So.2d 741,746 (Ala. 2000) (emphasis added). Reading § 12 of the lease as a whole leads to the conclusion that subsection I. refers to the event of termination of the lease — however that termination is accomplished — in contradistinction to subsection II., which refers to acontinuation of the lease — allowing the landlord to relet the premises as the agent of the tenants and to seek any deficiency in rent from the tenants. Seegenerally McClure v. Daniel, 45 Ala.App. 558, 561-62,233 So.2d 500, 502 (Civ.1970) (noting that "[w]hen a lessee abandons the leased premises or defaults in payment of the rent, it is the option of the lessor to allow the premises to remain vacant and recover rent for the whole term, or to put an end to the lease by re-entry").
As the landlord points out, construing § 12.I. in the way the tenants propose could encourage a landlord who intends to insist upon the right to accelerate the rent to risk a physical confrontation with the tenant (by expelling the tenant from the leased premises) rather than to use the more peaceable statutory remedy of eviction. Moreover, the tenants' conduct in this case did not fit within the scenario contemplated by the first sentence of § 12.I,ie., an "immediate[ ] surrender" of the premises to the landlord. Instead, the tenants failed to surrender possession of the premises until the landlord had prevailed in both the district court eviction proceeding and the tenants' appeal to the circuit court. We, therefore, hold that the circuit court correctly determined that the tenants "contractually agreed that they could be held liable for . . . accelerated rent . . . in the event of eviction."
The tenants next contend that, even if the landlord was entitled to seek accelerated rent after the eviction, they are not liable to pay the accelerated rent because the landlord did not make a timely demand for payment of accelerated rent — either in its notice of termination, its notice to vacate, or its eviction action. The lease provision applicable to this contention is contained in § 12.I: *Page 45 
 "Lessor may, at Lessor's option, declare the entire amount of rent which would become due and payable during the remainder of the term of this lease or any renewal or extension thereof to be due and payable immediately, in which event, Lessees agree to pay the same at once. . . ."
(Emphasis added.) The tenants argue that, because the landlord did not exercise its option to declare the accelerated rent "due and payable immediately," i.e., at the termination of the lease, the landlord waived its right to seek accelerated rent later, on July 21, 2004, when it filed its complaint in this proceeding.
The quoted provision in § 12.I. of the lease is an optional, as opposed to an automatic, rent-acceleration provision. See generally C.T. Drechsler, Annotation,What is Essential to Exercise of Option to AccelerateMaturity of Bill or Note, 5 A.L.R.2d 968, 970 (1949):
 "It appears to be well settled that a provision in a bill or note accelerating the maturity thereof on nonpayment of interest or installments, or other default, at the option of the holder, requires some affirmative action on the part of the holder, evidencing his election to take advantage of the accelerating provision, and that until such action has been taken the provision has no operation."
An optional acceleration provision is not self-executing; it generally requires the holder of the option to take some affirmative action evidencing his intention to exercise the option within a reasonable time after default. SeeMcJenkin v. Central Bank of Tuscaloosa, N.A.,417 So.2d 153, 157 (Ala. 1982):
 "A `due on sale' acceleration clause, not unlike other acceleration clauses, while giving an option to the holder to declare the full amount due, is not self-executing. Default does not ipso facto mature the whole debt. Walker Bank Trust Co. v. A.P. Neilson, 26 Utah 2d 383, 490 P.2d 328 (1971). And the election of the holder to declare the acceleration of the due date of the whole debt must be exercised within a reasonable time after default. Malouff v. Midland Federal Savings and Loan Association, 181 Colo. 294, 509 P.2d 1240 (1973). See, also, Tierce v. APS Co., 382 So.2d 485
(Ala. 1979)."
(Footnote omitted.)
Although we have found decisions indicating that the holder of an optional right to accelerate a debt waives the right to exercise his option if he accepts partial payments or past-due payments, see In re Parks, 193 B.R. 361, 366
(Bankr.N.D.Ala. 1995) (noting that "`[t]he forfeiture declarable under the strict terms of the contract may be waived by continued recognition and receipt of part payments, after ground of forfeiture'" (relying on Alabama law and quoting Barry v. Welch, 248 Ala. 167, 168,26 So.2d 872, 873 (1946))), the tenants cite no authority (and we have found none) for the proposition that a landlord waives his right to collect unaccrued rent after an eviction if the landlord does not immediately make a demand for payment pursuant to an optional acceleration clause in the lease.
The tenants make no argument that the landlord had a duty to mitigate its damages upon termination of the lease. They do not contend that the landlord's recovery should have been reduced by the rent allocated by the landlord to its subsidiary's occupation of the premises after July 1, 2004.Cf. Watts Bldg. Corp. v. Schoel, Ogle, Benton, Gentle, Centeno, 598 So.2d 832, 834 (Ala. 1992) (holding that the land-lord "is entitled to collect the rent due under the remaining term of the lease, subject to [the landlord's] mitigation of its damages"). They also do not contend that *Page 46 
the circuit court erred by failing to require the landlord to reduce its claim for future rent to present value. Cf.HealthSouth Rehab. Corp. v. Falcon Mgmt. Co.,799 So.2d 177, 185 (Ala. 2001). See generally David C. Skinner,Gambling with Remedies: Rent Acceleration and Mitigationof Damages in Alabama, 45 Ala. L.Rev. 275 (1993).
Accordingly, we conclude that the judgment of the Tuscaloosa Circuit Court is due to be affirmed.
AFFIRMED.
THOMPSON, PITTMAN, and MURDOCK, JJ., concur.
BRYAN, J., concurs in the result, without writing.